THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* BETTY F. PICHE, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CARL ALLAN REIMANN, Defendant-Appellant.

Second District (1st Division)   No. 73-318

Opinion filed December 30, 1976.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, and Eugene G. Griffin, of Aurora, for appellants.

Dallas C. Ingemunson, State's Attorney, of Yorkville (James W. Jerz and Edward N. Morris, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

The defendants herein were jointly tried before a jury which found both defendants guilty of five murders, armed robbery and theft. The defendant Reimann was sentenced to 20-60 years for the offense of armed robbery and 50-150 years for each of the five murders. The defendant Piche was sentenced to 20-60 years for each of the five murders and 10-30 years for the offense of armed robbery. All sentences were ordered to run concurrently and no sentence was imposed for the offense of theft. The State concedes the conviction for theft should be vacated as to both defendants because it is a lesser included offense of armed robbery. In this we agree.

On the night of December 29, 1972, Betty Piche and Carl Allan Reimann went to the Shamrock Bar in Plano, Illinois, the Sportsmen's Inn in Plano, back to the Shamrock Bar and, finally, to the Pine Village Restaurant just outside Plano. Reimann drew a gun and Piche proceeded to take the money from the cash register and from the five people who were present. While defendants were in the process of robbing the restaurant patrons and employees, Mr. Cantrell and his family entered the restaurant. They were advised to sit down and that they would not be harmed. After taking the money from the cash register and the five original parties in the restaurant, including Catherine Rekate, 16 years old, the dishwasher; George Pashade, the 75-year-old cook; John Wilson, the bartender; David Gardner and Robert Loftus, two patrons, the defendants walked to the door. As Piche and Reimann were leaving the restaurant after the armed robbery, Reimann methodically, carefully and slowly shot and killed the five people listed above. During the shooting

Reimann shot nine bullets from the gun subsequently recovered from him, seven into the bodies of the five victims and two others into the restaurant itself.

As the defendants left the premises, the father of the 16-year-old victim, Catherine Rekate, observed the defendants and noted that defendant Piche was wearing a blond wig. Defendants were apprehended within a few minutes after the murders; the wig apparently worn by Piche was recovered near the car, and the gun used in the murders was in the possession of the defendants but had been reloaded. The bullets recovered from the bodies of the five victims were subsequently identified as having been fired from the gun found in the defendants' possession.

■■ We consider first the separate appeal of the defendant Carl Reimann. The sole issue raised by this defendant is whether the State, by sufficient and credible evidence, proved the defendant Reimann to be sane beyond a reasonable doubt at the time of the commission of the five murders and the armed robbery.

It has often been stated that,

> "All men are presumed to be sane and in order to present the issue of the accused's insanity the evidence must raise a reasonable doubt of his sanity at the time of the commission of the offense." (*People v. Arnold* (1974), 17 Ill. App. 3d 1043, 1049, 309 N.E.2d 89, 93.)

(*People v. Smothers* (1973), 55 Ill. 2d 172, 174, 302 N.E.2d 324, 326; *People v. Harrington* (1974), 22 Ill. App. 3d 938, 944, 317 N.E.2d 161, 165.) And it has also been stated numerous times that,

> "Once sufficient evidence of insanity is introduced the ordinary presumption of sanity does not prevail and the burden devolves on the State to prove that the accused was legally sane at the time of the commission of the act." (*People v. Arnold* (1974), 17 Ill. App. 3d 1043, 1049, 309 N.E.2d 89, 93.)

*People v. Harrington; People v. Hawkins* (1972), 53 Ill. 2d 181, 186, 290 N.E.2d 231, 233.

On the issue of the alleged insanity of the defendant, two doctors testified on behalf of the defendant and a clinical psychologist and a psychiatrist testified for the State. The evidence is conflicting. Dr. Ziporyn, the first witness to testify for the defendant, stated that to a reasonable degree of medical certainty the defendant Reimann was incapable of conforming his conduct to the requirements of the law on the evening of the murders as a result of a mental defect. Dr. Ziporyn related in detail the history given to him by the defendant, including the statement of the events occurring on the date of the murders and a statement by the defendant as to previous head injuries which he had

suffered. Dr. Ziporyn concluded that the defendant was suffering from "a chronic organic brain syndrome associated with cerebral trauma." Dr. Frederick Gibbs testified as an electroencephalography expert that he had interpreted the electroencephalogram of defendant Reimann and found the results to be abnormal, the abnormality indicative of an injury to the frontal lobes of the brain. Dr. Ziporyn testified that his conclusion as to cerebral trauma was confirmed by the electroencephalogram made by Dr. Gibbs. Dr. Mick, a clinical psychologist who testified for the State, gave numerous tests to the defendant. He testified that his clinical findings revealed no evidence of impairment in the brain function of defendant Reimann. Dr. Hamann, a psychiatrist who testified for the State, found the defendant to be legally sane.

The defendant, Reimann, contends the killing and consequent elimination of the five witnesses to the robbery would be of no value to defendant Reimann when he allowed six persons to survive as witnesses to a far more serious crime, that is, the five murders, and that there was a complete absence of motivation in his shooting of the victims. However, since both defendants resided in the general vicinity of the Pine Village Restaurant they might have been identified by any or all of the murder victims. Furthermore, the State observes that the defendant Reimann had nine bullets in his gun, that he used seven of the bullets to kill the five victims and that all nine bullets were discharged in the restaurant. As the State points out, it may well have been that the defendant did not have additional bullets with him at that time which could have been used for the killing of the six members of the Cantrell family who came into the restaurant during the armed robbery. The State contends that the shooting of the witnesses who were most likely to have identified the two defendants, is a rational act committed with the purpose of eliminating possible identification by the five victims of the armed robbery.

As this court stated in *People v. Anderson* (1968), 104 Ill. App. 2d 47, 54, 242 N.E.2d 798, 801:

> "The evidence on the sanity issue in the case at bar was in conflict: that with reference to the commission of the offense by the defendant was without conflict. The conflict on the sanity issue gave rise to a factual question which the jury was peculiarly suited to determine, and its findings will not be disturbed unless they are so manifestly against the weight of the evidence as to indicate that the verdict was based on passion or prejudice. [Citations.]"

As we further stated in that case, we would not reverse a judgment of conviction unless the evidence was so unreasonable, unprobable and unsatisfactory as to justify a reasonable doubt as to defendant's guilt. There is no doubt as to defendant's guilt here, the sole question being his sanity. From our examination of the conflicting

testimony of the doctors for the State and the defendant, we find that the jury was justified in finding that the defendant was sane at the time of the commission of the murders and the armed robbery and the same is not against the manifest weight of the evidence.

■■ We turn now to the separate appeal contained herein of the defendant Piche. The sole issue presented to us is whether the felony murder doctrine as applied to defendant-appellant Betty Piche violates principles of fundamental fairness. As the defendant points out, the felony murder doctrine, or statutory provision, is found in the Criminal Code of 1961 (Ill. Rev. Stat. 1971, ch. 38, par. 9—1(a)):

> "A person who kills an individual without lawful justification commits murder if, in performing the acts which cause the death:
>
> * * *
>
> (3) He is attempting or committing a forcible felony other than voluntary manslaughter."

The defendant contends that not all killings coincident with a felony constitute a felony murder. Defendant further states that for a homicide to become a felony murder the same must relate to the achievement of a common purpose or be the natural and probable consequence of reasonably anticipated resistance. Defendant Piche argues that the "five, cold, brutal, methodical, senseless killings by Carl Reimann bore absolutely no relationship to the achievement of a common purpose." We do not agree. In *People v. Johnson* (1973), 55 Ill. 2d 62, 302 N.E.2d 20, we find a case factually most similar to the situation before us herein. In *Johnson* the two men entered the tavern and Johnson proceeded to take the money from the cash register. His companion, Clay, had his face covered with a stocking mask, both left the tavern and a few moments later Clay reentered the tavern and fatally shot one of the customers. Defendant Johnson argued in that case he could not be convicted of felony murder since the killing was not related to the robbery. The Supreme Court stated:

> "Why he returned two seconds after leaving the tavern to kill the woman cannot be certainly determined, but the jury could have concluded that it was because he sensed she had recognized him. By killing her he would improve the defendant's and his chances for escape, would avoid detection for the crimes, and would eliminate the possibility of Mrs. Pietras testifying against him." (55 Ill. 2d 62, 69, 302 N.E.2d 20, 24.)

We find, therefore, that the felony herein, to-wit, the armed robbery, was still in progress at the time the five victims were shot by Reimann and that the jury could find,

> "Where murder is committed during a robbery, all participants in the robbery are deemed equally guilty of murder and it is

immaterial who fired the fatal shot." (*People v. Weber* (1949), 401 Ill. 584, 604, 83 N.E.2d 297, 308.)

(*People v. Armstrong* (1969), 41 Ill. 2d 390, 399, 243 N.E.2d 825, 830.) The basic argument of the defendant Piche is that, while she may be a twice convicted armed robber, she is not a murderer and could not have anticipated that her companion in the armed robbery would commit the murders. We do not agree with this argument as it appears that the robbery was, in fact, well planned, that defendant Piche was not a novice, and that the unfortunate choice of her robber companion should not redound to her benefit where, in the execution of the armed robbery and at the conclusion thereof, these senseless killings were perpetrated by her companion.

For the foregoing reasons the judgments of the trial court convicting defendants Reimann and Piche of five murders and armed robbery are affirmed. The convictions of both defendants for theft are vacated.

*Affirmed as modified.*

SEIDENFELD and RECHENMACHER, JJ., concur.