(Nos. 81599, 81600, 81601 cons.—

SILAS FLETCHER, Appellee, v. JAMES K. WIL-
LIAMS *et al.*, Appellants.—THEODORE PAR-
SONS, Appellee, v. JAMES K. WILLIAMS *et al.*,
Appellants.—CARL REIMANN, Appellee, v.
JAMES K. WILLIAMS *et al.*, Appellants.

*Opinion filed November 20, 1997.*

James E. Ryan, Attorney General, of Springfield (Barbara A. Preiner, Solicitor General, and Arleen C. Anderson, Darryl B. Simko and William L. Browers, Assistant Attorneys General, of Chicago, of counsel), for appellants.

Silas Fletcher, of Dixon, appellee *pro se.*

CHIEF JUSTICE FREEMAN delivered the opinion of the court:

Section 3—3—5(f) of the Unified Code of Corrections formerly required the Illinois Prisoner Review Board, after initially denying a prisoner parole, to schedule a parole hearing for the prisoner every year. Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(f). That section, as amended, now permits the Board to schedule a prisoner's next parole hearing at an interval of up to three years "if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." 730 ILCS 5/3—3—5(f) (West 1996).

At issue is whether amended Corrections Code section 3—3—5(f), as applied to the plaintiffs in these three consolidated appeals, is an *ex post facto* law and, therefore, unconstitutional. Pursuant to *California Department of Corrections v. Morales*, 514 U.S. 499, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995), we hold that amended section 3—3—5(f) does not violate the constitutional prohibitions against *ex post facto* laws in these cases.

BACKGROUND

Plaintiffs, Silas Fletcher, Carl Reimann, and Theodore Parsons, are prisoners in the custody of the Illinois

Department of Corrections at Dixon Correctional Center. Fletcher was convicted of the aggravated kidnapping and murder of a police officer and sentenced to serve 100 to 200 years in prison. See *People v. Fletcher*, 59 Ill. App. 3d 310 (1978). Reimann and his codefendant were convicted of five murders in the course of an armed robbery and received concurrent prison sentences of 50 to 150 years for each murder and 20 to 60 years for the armed robbery. See *People v. Piche*, 44 Ill. App. 3d 993 (1976). Parsons and his codefendants were convicted of two murders and an attempted murder in the course of an armed robbery. See *People v. Gleckler*, 82 Ill. 2d 145 (1980). Parsons received consecutive sentences of 150 to 1,000 years for the murders, 30 years for the attempted murder, and 30 years for the armed robbery.

Each plaintiff appeared before the Illinois Prisoner Review Board, chaired by James K. Williams (herein jointly referred to as the Board), for an annual parole hearing: the thirteenth parole hearing for Fletcher, the seventh for Reimann, and the second for Parsons. In each case, the Board denied parole and scheduled the next parole hearing for three years later. We note that in Fletcher's and Parsons' cases, the Board expressly cited to amended section 3—3—5(f). See 730 ILCS 5/3—3—5(f) (West 1996).

Each plaintiff brought an action in the circuit court of Lee County against the Board. Plaintiffs sought a declaration that amended section 3—3—5(f), as applied to them, is an unconstitutional *ex post facto* law; and either an injunction precluding the Board from scheduling subsequent parole hearings in three-year intervals, or an order forcing the Board to provide them with annual parole hearings.

We note that Fletcher and Reimann also included a count in each of their complaints alleging that Public

Act 89—428, in which amended section 3—3—5(f) was enacted, violates the single-subject rule of the Illinois Constitution. Ill. Const. 1970, art. IV, § 8(d). Reimann additionally alleged that the Board's rationale for his parole denial did not include the finding required by amended section 3—3—5(f) that it was "not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." 730 ILCS 5/3— 3—5(f) (West 1996).

The circuit court addressed only the *ex post facto* issue. Relying on *Tiller v. Klincar*, 138 Ill. 2d 1 (1990), the circuit court declared amended section 3—3—5(f) as applied to plaintiffs an unconstitutional *ex post facto* law. The court enjoined the Board from scheduling subsequent parole hearings for plaintiffs less frequently than once per year. The court found no just cause to delay the enforcement or appeal of the decision. See 155 Ill. 2d R. 304(a).

The State appeals directly to this court. 134 Ill. 2d R. 302(a). We consolidated these cases for review, and now reverse the circuit court.

## DISCUSSION

### Jurisdiction

The issue of whether amended Corrections Code section 3—3—5(f) as applied to plaintiffs is an unconstitutional *ex post facto* law is appealable because the circuit court made the requisite finding pursuant to Supreme Court Rule 304(a). 155 Ill. 2d R. 304(a). The appeal lies directly to this court because the circuit court found that the statute as applied to plaintiffs is unconstitutional. 134 Ill. 2d R. 302(a). See, *e.g.*, *Barger v. Peters*, 163 Ill. 2d 357 (1994); *Tiller v. Klincar*, 138 Ill. 2d 1 (1990).

We note that amended section 3—3—5(f) was enacted as part of Public Act 89—428. Pub. Act 89—428, art. 5,

eff. December 13, 1995. This court recently invalidated Public Act 89—428 because it violated the single-subject rule of the 1970 Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). *Johnson v. Edgar*, 176 Ill. 2d 499 (1997). In *Johnson*, "[t]he defect we identified in Public Act 89—428 was in the structure of the Act, not in its substantive provisions." *Johnson*, 176 Ill. 2d at 521.

The legislature reenacted amended section 3—3—5(f) in Public Act 89—689. Pub. Act 89—689, § 100, eff. December 31, 1996; see *Johnson*, 176 Ill. 2d at 510. Thus, we are now squarely presented with the issue of whether amended section 3—3—5(f) as applied to plaintiffs is an unconstitutional *ex post facto* law.

## The Merits

### *The Ex Post Facto Prohibition*

The United States Constitution prohibits both Congress (U.S. Const., art. I, § 9) and the states (U.S. Const., art. I, § 10) from enacting *ex post facto* laws. The Illinois Constitution also forbids the enactment of *ex post facto* laws. Ill. Const. 1970, art. I, § 16. This court, in interpreting the *ex post facto* prohibition in the Illinois Constitution, looks to the United States Supreme Court's interpretation of the federal prohibition. *Barger*, 163 Ill. 2d at 360.

The United States Supreme Court has long recognized "that the constitutional prohibition on *ex post facto* laws applies only to penal statutes which disadvantage the offender affected by them." *Collins v. Youngblood*, 497 U.S. 37, 41, 111 L. Ed. 2d 30, 38, 110 S. Ct. 2715, 2718 (1990). The prohibition against *ex post facto* laws serves at least two purposes. The prohibition restrains Congress and state legislatures from enacting arbitrary or vindictive legislation. The prohibition also assures that statutes give fair warning of their effect and permit individuals to rely on their meaning until

explicitly changed. *Miller v. Florida*, 482 U.S. 423, 429-30, 96 L. Ed. 2d 351, 359-60, 107 S. Ct. 2446, 2451 (1987); *Weaver v. Graham*, 450 U.S. 24, 28-29, 67 L. Ed. 2d 17, 23, 101 S. Ct. 960, 964 (1981).

The State posits that "parole is a matter of legislative grace which does not implicate *ex post facto* concerns." However, a statute need not impair a vested right to violate the *ex post facto* prohibition. The presence or absence of an affirmative, enforceable right is irrelevant to an analysis under the *ex post facto* prohibition. Critical to relief under the *ex post facto* clauses is not an individual's right to less punishment, but rather the lack of governmental restraint and fair notice when the legislature increases punishment beyond what was prescribed when the crime was committed. Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it can nevertheless violate the *ex post facto* prohibition. *Weaver*, 450 U.S. at 29-30, 67 L. Ed. 2d at 23-24, 101 S. Ct. at 964-65; accord *Lynce v. Mathis*, 519 U.S. 433, 441, 137 L. Ed. 2d 63, 72, 117 S. Ct. 891, 896 (1997).

Based on these principles, the United States Supreme Court prescribed a test for determining whether a criminal law is *ex post facto*. Under this test: (1) the law must be retrospective, *i.e.*, it must apply to events occurring before its enactment; and (2) the law must disadvantage the offender affected by it. *Miller*, 482 U.S. at 430, 96 L. Ed. 2d at 360, 107 S. Ct. at 2451, quoting *Weaver*, 450 U.S. at 29, 67 L. Ed. 2d at 23, 101 S. Ct. at 964; *Lindsey v. Washington*, 301 U.S. 397, 401, 81 L. Ed. 1182, 1186, 57 S. Ct. 797, 799 (1937).

*Corrections Code Section 3—3—5(f)*

Corrections Code section 3—3—5 establishes procedures for hearing and evaluating the cases of prisoners eligible for parole. Paragraph (f) of that section governs the frequency with which parole hearings must be

granted. 730 ILCS 5/3—3—5(f) (West 1996). Plaintiffs allege that at the time they committed their offenses, they were entitled to annual parole hearings. Section 3—3—5(f) formerly provided in pertinent part that "if [the Board] denies parole it shall provide for a rehearing not more than 12 months from the date of denial." Ill. Rev. Stat. 1975, ch. 38, par. 1003—3—5(f).

Section 3—3—5(f) was amended several times, so that by 1988, the section provided in pertinent part:

"In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehearing not less frequently than once every 3 years. The Board may, after denying parole to a person originally sentenced or who became eligible for parole between January 1, 1973 and September 30, 1977, schedule a rehearing no later than 3 years from the date of the parole denial, if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—5(f).

Today, the provision reads in pertinent part:

"In its decision, the Board shall set the person's time for parole, or if it denies parole it shall provide for a rehearing not less frequently than once every year, except that the Board may, after denying parole, schedule a rehearing no later than 3 years from the date of the parole denial, if the Board finds that it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." 730 ILCS 5/3—3—5(f) (West 1996).

Thus, amended section 3—3—5(f), as it did at the time of this court's decision in *Tiller v. Klincar*, 138 Ill. 2d 1 (1990), permits the Board to schedule a prisoner's parole hearings at intervals of up to three years if the Board finds that it is not reasonable to expect that the prisoner would be granted parole before the next scheduled hearing date. See *Tiller*, 138 Ill. 2d at 6-7.

In *Tiller*, 138 Ill. 2d at 6-12, this court applied the *"Miller-Weaver-Lindsey"* test of *ex post facto* lawmaking

to the 1988 amended section 3—3—5(f). In *Tiller*, the Board conceded that the 1988 amended section 3—3—5(f) was intended to apply retroactively to prisoners such as Tiller, the plaintiff in that case. This court concluded that Tiller was disadvantaged when the Board scheduled his next parole hearing at an interval greater than one year.

The *Tiller* court noted that "[t]he possibility of parole is an element of the punishment annexed to any crime." *Tiller*, 138 Ill. 2d at 11, citing, *inter alia, Warden, Lewisburg Penitentiary v. Marrero*, 417 U.S. 653, 662-64, 41 L. Ed. 2d 383, 391-92, 94 S. Ct. 2532, 2537-38 (1974). The court then reasoned:

> "If that opportunity is curtailed through a reduction in the frequency of parole hearings or in their complete elimination, then the inmate has suffered a disadvantage for *ex post facto* purposes. [Citations.] *** '[O]nly an unusual prisoner could be expected to think that he is not suffering a penalty when even though he is eligible for parole and might be released if granted a hearing, he is denied that hearing.' [Citation.]" *Tiller*, 138 Ill. 2d at 11.

The *Tiller* court also held that two features of the 1988 amended section 3—3—5(f) did not sufficiently ameliorate the disadvantage to Tiller. The 1988 amended section 3—3—5(f) required the Board to make the special finding that "it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." Ill. Rev. Stat. 1989, ch. 38, par. 1003—3—5(f). The *Tiller* court concluded that this provision merely made explicit what the Board would have implicitly considered in scheduling the next parole hearing. *Tiller*, 138 Ill. 2d at 10.

Also, the Board's regulations provided that a prisoner may request a rehearing at any time based upon " 'new facts or extraordinary circumstances which could not have been known' " to the prisoner at the time of his interview or " 'which have arisen subsequent to the

time of the interview \*\*\* which have not been previously considered.' " *Tiller*, 138 Ill. 2d at 10, quoting 20 Ill. Adm. Code § 1610.100(a)(2) (1985). The *Tiller* court concluded that this provision nevertheless delayed Tiller's ability to present to the Board information that, if known to the Board, might have caused the Board to grant Tiller's parole application. *Tiller*, 138 Ill. 2d at 11. The *Tiller* court held that the 1988 amended section 3—3—5(f), as applied to Tiller, was an *ex post facto* law and, therefore, unconstitutional.

### Collins-Morales

However, subsequent to *Tiller*, the United States Supreme Court altered the second element of its test for determining whether a criminal law is *ex post facto*. In *Collins v. Youngblood*, the Court rejected the requirement that a statute disadvantage an offender. The effect of *Collins* was to reestablish the "*Calder* categories" as the controlling definition of an *ex post facto* law:

> " '1st. Every law that makes an action done before the passing of the law, and which was *innocent* when done, criminal; and punishes such action. 2d. Every law that *aggravates* a *crime*, or makes it *greater* than it was, when committed. 3d. Every law that *changes the punishment*, and inflicts a *greater punishment*, than the law annexed to the crime, when committed. 4th. Every law that alters the *legal* rules of *evidence*, and receives less, or different, testimony, than the law required at the time of the commission of the offence, *in order to convict the offender.*' "
> (Emphasis in original.) *Collins*, 497 U.S. at 41-42, 111 L. Ed. 2d at 38-39, 110 S. Ct. at 2719, quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L. Ed. 648, 650 (1798).

Over a century later, the Court summarized the *Calder* categories as follows:

> " 'It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commis-

sion, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto*.'" *Collins*, 497 U.S. at 42, 111 L. Ed. 2d at 39, 110 S. Ct. at 2719, quoting *Beazell v. Ohio*, 269 U.S. 167, 169-70, 70 L. Ed. 216, 217, 46 S. Ct. 68, 68 (1925).

The Court in *Collins* held that "[t]he *Beazell* formulation is faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause: Legislatures may not retroactively alter the definition of crimes or increase the punishment for criminal acts." *Collins*, 497 U.S. at 43, 111 L. Ed. 2d at 39, 110 S. Ct. at 2719.

In *California Department of Corrections v. Morales*, 514 U.S. 499, 131 L. Ed. 2d 588, 115 S. Ct. 1597 (1995), the Court applied the analysis used in *Collins* to a California statutory amendment that permitted a decrease in the frequency of parole hearings from once every year to every three years. The Court reaffirmed its rejection of an offender's "disadvantage" as an element in the test for determining whether a criminal law was *ex post facto*:

> "Our opinions in *Lindsey*, *Weaver*, and *Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition because they operate to the 'disadvantage' of covered offenders. [Citations.] But that language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood* [citation]. After *Collins*, the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' nor *** on whether an amendment affects a prisoner's '*opportunity* to take advantage of provisions for early release,' *** but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable." (Emphasis in original.) *Morales*, 514 U.S. at 506 n.3, 131 L. Ed. 2d at 595 n.3, 115 S. Ct. at 1602 n.3.

*Morales* teaches that a statute that decreases the frequency of parole hearings will violate the *ex post*

*facto* prohibition only when "it produces a sufficient risk of increasing the measure of punishment attached to the covered crimes." This inquiry cannot be embraced within a formula or stated in a general proposition, but rather is a matter of degree. However, where the legislative adjustment creates only a "speculative and attenuated possibility" of increasing punishment, it cannot be considered *ex post facto. Morales*, 514 U.S. at 509, 131 L. Ed. 2d at 597, 115 S. Ct. at 1603. The Court distinguished *Morales* from *Lindsey, Weaver*, and *Miller* in that the statutes at issue in those cases "had the purpose and effect of enhancing the range of available prison terms." *Morales*, 514 U.S. at 507, 131 L. Ed. 2d at 596, 115 S. Ct. at 1602.

The *Morales* Court held that the California statutory amendment in that case did not produce a sufficient risk of increasing the measure of punishment attached to the covered crimes and, thus, was not *ex post facto*. In reaching its conclusion, the Court specifically noted ameliorating features of the California parole scheme—two of those features which, in the Illinois scheme, the *Tiller* court did not find constitutionally significant. The *Morales* Court noted that the amended California statute requires the parole board to find that it is not reasonable to expect that parole would be granted prior to the next scheduled hearing date. *Morales*, 514 U.S. at 511, 131 L. Ed. 2d at 598, 115 S. Ct. at 1604. The Court also noted the practice of the parole board to consider at any time a prisoner's request for an earlier parole hearing. *Morales*, 514 U.S. at 512-13, 131 L. Ed. 2d at 599, 115 S. Ct. at 1604-05. The Court concluded that the California statutory amendment created "only the most speculative and attenuated risk of increasing the measure of punishment attached to the covered crimes." *Morales*, 514 U.S. at 514, 131 L. Ed. 2d at 599, 115 S. Ct. at 1605.

It is clear that the reasoning of the Court in *Morales* contravenes this court's reasoning in *Tiller*. Dissenting from the majority opinion in *Morales*, Justice Stevens listed decisions, including *Tiller*, which have held that the retroactive application of a statute that decreases the frequency of formerly annual parole hearings constricts an inmate's opportunity to earn early release and, therefore, constitutes increased punishment in violation of the *ex post facto* prohibition. *Morales*, 514 U.S. at 519, 131 L. Ed. 2d at 603, 115 S. Ct. at 1608 (Stevens, J., dissenting, joined by Souter, J.). Several of those courts have acknowledged that *Morales* has overruled that holding. See, *e.g.*, *Roller v. Gunn*, 107 F.3d 227, 234-35 (4th Cir. 1997); *Jones v. Georgia State Board of Pardons & Paroles*, 59 F.3d 1145, 1149 n.8 (11th Cir. 1995). We must do likewise. We hold that *Morales* has overruled that part of *Tiller* that discusses the issue of *ex post facto*.

Applying the reasoning of *Morales* to the present case, we conclude that amended Corrections Code section 3—3—5(f) is not an *ex post facto* law. We remember the admonition of *Morales* that the *ex post facto* inquiry cannot be contained in a formula or general proposition. Rather, the question is simply whether the statute at issue produces a sufficient risk of increasing the measure of punishment. See *Morales*, 514 U.S. at 509, 131 L. Ed. 2d at 597, 115 S. Ct. at 1603.

Subsequent to *Morales*, the Supreme Court identified three ameliorating characteristics of the California statutory amendment in *Morales* that supported the decision to uphold the law. First, the amendment affected a narrow class of prisoners—multiple murderers—who had little chance of being released on parole. Second, the amendment did not alter the date of a prisoner's initial parole hearing and, thus, affected only those initially deemed unsuitable for parole. Third, the parole

board retained the authority to tailor the frequency of subsequent parole hearings to the particular circumstances of the individual prisoner. *Lynce*, 519 U.S. at 446 n.16, 137 L. Ed. 2d at 75 n.16, 117 S. Ct. at 898 n.16.

Turning to amended section 3—3—5(f), it is true that the provision applies to all prisoners and not to any particular prisoner class. However, this characteristic, by itself, is not constitutionally determinative. Other ameliorating characteristics of amended section 3—3—5(f) insure that the provision does not enhance the range of available prison terms or the substantive criteria for determining a prisoner's eligibility or suitability for parole. In other words, the amended provision does not have the prohibited effect of increasing punishment. See *Morales*, 514 U.S. at 510 n.7, 131 L. Ed. 2d at 597 n.7, 115 S. Ct. at 1604 n.7.

Next, amended section 3—3—5(f) is tailored to the determination of the likelihood that a prisoner would be released sooner than an extended parole hearing date. Amended section 3—3—5(f) does not affect the date of a prisoner's initial parole hearing; it affects the timing only of subsequent hearings. Accordingly, the provision does not affect any prisoner unless the Board has first concluded, after a hearing, not only that a prisoner is unsuitable for parole, but also that "it is not reasonable to expect that parole would be granted at a hearing prior to the scheduled rehearing date." 730 ILCS 5/3—3—5(f) (West 1996); see *Morales*, 514 U.S. at 511, 131 L. Ed. 2d at 598, 115 S. Ct. at 1604.

Also, the Board retains the authority under amended section 3—3—5(f) to tailor the frequency of subsequent parole hearings to the particular circumstances of the individual prisoner. The amendment explicitly provides that if the Board makes the special finding, then the Board can schedule the next hearing "no later than"

three years after the parole denial. 730 ILCS 5/3—3—5(f) (West 1996). Thus, the amendment allows the Board to set the next parole hearing date anytime between the one-year minimum and the three-year maximum, as a prisoner's particular circumstances dictate. See *Morales*, 514 U.S. at 511-12, 131 L. Ed. 2d at 598, 115 S. Ct. at 1604.

Further, an Illinois prisoner may seek a parole hearing at anytime based on "new facts or extraordinary circumstances which could not have been known" to the prisoner at the time of his interview or "which have arisen subsequent to the time of" the interview "which have not been previously considered." 20 Ill. Adm. Code § 1610.100(a)(2) (1996); see *Morales*, 514 U.S. at 512-13, 131 L. Ed. 2d at 599, 115 S. Ct. at 1604-05.

Based on all of these ameliorating characteristics, we cannot say that amended Corrections Code section 3—3—5(f) will have any constitutionally significant effect on any prisoner's actual term of confinement. Therefore, we hold that it does not violate the constitutional prohibition against *ex post facto* laws.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Lee County is reversed, and the cause remanded for consideration of the remaining counts of plaintiffs' complaints.

*Reversed and remanded.*