NOTICE
Decision filed 01/06/23. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2023 IL App (5th) 200283-U

NO. 5-20-0283

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Marion County. |
| | ) | |
| v. | ) | No. 16-CF-182 |
| | ) | |
| D'SHAWN DUNCAN, | ) | Honorable |
| | ) | J. Marc Kelly, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE BOIE delivered the judgment of the court.
Justices Welch and Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*: Where there is no arguable basis for reversing or vacating any portion of the judgment of conviction, the defendant's appointed appellate attorney is granted leave to withdraw, and the judgment of conviction is affirmed.

¶ 2    The defendant, D'Shawn Duncan, appeals from a judgment of conviction that was entered after a jury found him guilty of possession with intent to deliver a controlled substance within 500 feet of a public park. He was sentenced to imprisonment. Currently, he is serving a term of mandatory supervised release (MSR). His appointed attorney on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit, and on that basis OSAD has filed with this court a motion to withdraw as counsel and a memorandum of law in support of the motion. See *Anders v. California*, 386 U.S. 738 (1967). This court granted the defendant ample opportunity to file a written response to OSAD's motion, or a brief, memorandum, etc.,

1

explaining why this appeal has merit, but he has not taken advantage of that opportunity. Having examined OSAD's *Anders* motion and memorandum, along with the entire record on appeal, this court agrees with OSAD that this appeal has no merit. Accordingly, OSAD is granted leave to withdraw as counsel on appeal, and the judgment of conviction, entered by the circuit court of Marion County, is affirmed.

¶ 3                                    BACKGROUND

¶ 4    In June 2016, the defendant was charged by information with possession with intent to deliver a controlled substance, specifically, less than one gram of a substance containing heroin, a Class 2 felony. See 720 ILCS 570/401(d) (West 2016). The information alleged that he possessed the substance within 1000 feet of a school, making the offense a Class 1 felony. See *id.* § 407(b)(2). The information also stated that due to a prior conviction for the Class 1 felony of residential burglary, the charge was not probationable, and the defendant was eligible for extended-term sentencing.

¶ 5    There followed many delays attributable to the defendant. For approximately one year, the defendant was a fugitive. Eventually, he was extradited from Kentucky, and the case resumed.

¶ 6    On November 7, 2019, the State and the defendant *pro se* appeared before the circuit court. The State moved to amend the information so as to allege that he possessed the heroin within 500 feet of a public park. See 720 ILCS 570/407(b)(2) (West 2018). All other aspects of the information remained the same. Over the defendant's objection, the circuit court allowed the amendment. (The amendment of the charge reflected an amendment of the criminal statute, which went into effect while the defendant was a fugitive.)

¶ 7    The State also filed two motions *in limine*. The first such motion sought the circuit court's ruling on whether it could impeach the defendant's credibility as a witness with his prior conviction

2

for residential burglary in Marion County case No. 13-CF-87, in the event the defendant chose to testify at his trial. (For that residential-burglary conviction, the defendant was sentenced to imprisonment for four years.) At a hearing, the defendant, through appointed counsel, opposed the State's motion, on the ground of unfair prejudice. Finding that the prior conviction concerned "honesty" and that "any unfair prejudicial effects would be minimal in this case," the court granted the motion.

¶ 8    In the other motion *in limine*, the State sought a ruling on whether it could offer into evidence a portion of a recorded police interview with the defendant, a portion that concerned "prior bad acts / other crimes" committed by the defendant. According to the motion, the recording included the defendant's stating that "his brother sent him to Family Dollar on [June 3, 2016, the date of the instant offense] to make $60.00 for his brother and in return his brother would give him $10." The defendant also discussed "how this is the second time he has done this for his brother." Then, the police interrogator told the defendant that he was aware that the Centralia Police Department had "a couple of prior buys on the defendant," and that he was not sure whether the defendant was merely helping his brother or starting out on his own. The defendant responded with, "I told you, man, I can't sell that shit on my own." The State argued in its motion that this other-crimes evidence was relevant to show something other than a propensity to commit crimes— it showed the defendant's intent, and the absence of mistake or accident. At a hearing on this motion, the defendant, through appointed counsel, objected to the motion, stating, *inter alia*, that the other-crimes evidence showed only a propensity to commit crimes. The court granted the State's motion, allowing the other-crimes evidence to come in.

¶ 9    In February 2020, a trial by jury was held. The defendant was represented by appointed counsel. During *voir dire*, the circuit court addressed, sequentially, two groups of 14 prospective

3

jurors. All the petit jurors, plus an alternate, were selected from those two 14-person groups. The court asked each group about the four principles enunciated in Illinois Supreme Court Rule 431(b) (eff. July 1, 2012), *i.e.*, (1) that the defendant is presumed innocent of the charge against him, (2) that before a defendant can be convicted, the State must prove him guilty beyond a reasonable doubt, (3) that the defendant is not required to offer any evidence on his own behalf, and (4) that if a defendant does not testify, it cannot be held against him. The court inquired about the four principles one at a time, asking, "Do you understand and accept," then stating the principle, and finally asking for a show of hands on whether anyone did not understand or accept the principle. Not a hand was raised concerning any of the four principles, among the members of either group of 14. Eventually, a jury was selected.

¶ 10    The State presented its case in chief. Ryan Castleman, a detective with the Marion County Sheriff's Office, testified that on June 2, 2016, he possessed the cell phone of Casey Harrington, a "confidential source" of Castleman who had died the previous evening. At 1:47 p.m., this phone received a text message from "Tezz A," which read simply, "Tar." From his training and experience in drug investigations, Castleman immediately thought of black tar heroin. He replied to that message with, "I be good tomorrow," by which he meant that he could buy heroin the next day. From the phone's contact list, Castleman found a telephone number associated with Tezz A. He typed that number in the search bar of Facebook, and it returned a profile of "Jonh Doe." On the Facebook page of Jonh Doe, Castleman saw two photographs of people he recognized. One photo included the defendant and his brother, Mantez Duncan, who was known as "Tezz." The other photo showed Muzette Barnes, who was the mother of the defendant and Mantez Duncan, and Amilia Rivera, who was the girlfriend of the defendant. During the next morning, June 3, Castleman and Tezz A texted back and forth. Castleman continued to use Casey Harrington's

4

phone and continued to pose as Casey Harrington. They agreed that Castleman would purchase $60 worth of heroin at the Family Dollar store in Centralia.

¶ 11 Castleman further testified that he arrived at Family Dollar at 11:47 a.m. and parked his car. He was dressed in street clothes, and drove something other than a squad car. He recognized a black SUV that was parked in the lot, near the store. From the front passenger door of the SUV, a black man stepped out. The man was dressed in white pants and a white t-shirt, and he started walking near the store. Castleman got out of his car and started to follow the man. The man looked back toward Castleman a couple of times, and Castleman recognized the man as the defendant. Then, Castleman displayed his badge and told the defendant that he wanted to speak with him. The defendant "took off running" and Castleman ran after him. Running between a house at 415 East Cormick and a trailer to the east of it, Castleman lost sight of the defendant for "two seconds" as he rounded a corner of that house. The defendant's arms "flailed," and Castleman could not see whether the defendant "threw something or not." Castleman rounded that same corner of the house, regained sight of the defendant, and tackled him to the ground. The foot chase was all within one block, and it lasted no more than eight seconds.

¶ 12 After being tackled by Castleman, the defendant was searched by another officer. Cash in the amount of $455 was found on the defendant's person. Police transported the defendant to the Marion County Sheriff's Office, where Castleman would interview him. The SUV was searched, and a digital scale was found on the center console. Castleman walked the route of the foot chase. On a pile of leaves, very near the house at 415 East Cormick, he saw "a little square foil." Opening it, he saw "a brown tar like substance" inside.

¶ 13    Proceeding to the Marion County Sheriff's Office, Castleman questioned the defendant for approximately 15 minutes. This interview was recorded, and it was played for the jury. (This recorded interview was also the subject of a motion *in limine*, discussed *supra*.)

¶ 14    In the recording, Castleman first informed the defendant of his rights during in-custody interrogation, and the defendant indicated that he understood. The defendant stated that he assists his brother, Mantez, with drug deals, and that Mantez gives him $10 or $20 for every "move" he makes. His planned sale of heroin to Castleman, earlier that day, was only the "second time" that the defendant had tried to assist his brother in that manner. Mantez simply told the defendant to go to Family Dollar, receive payment from the buyer, and the defendant would get $10. Castleman told the defendant that he was aware that Centralia police had participated in a couple of drug buys from the defendant, and Castleman stated that he did not know whether the defendant was merely helping his brother or attempting to strike out on his own. The defendant replied, "I can't sell this shit alone." Finally, the defendant stated that he had "set" the foil packet where Castleman had discovered it, along the route of their foot chase. For much of the interview, the defendant sat with his hands shoved down the front of his pants. He was responsive to questions, and he did not show clear signs of being under the influence of alcohol or other drugs.

¶ 15    Castleman ended his direct testimony by describing how he used a measuring wheel to determine the distance from Laura Leake Park, a municipal park, to a spot along the short route of the foot chase. By that time, the house at 415 East Cormick had been demolished. He found the distance to be 386 feet, 11 inches.

¶ 16    On cross-examination by defense counsel, Castleman added a point about his interview with the defendant. The defendant stated that the cell phone Castleman had texted to arrange the drug buy belonged to his brother, Mantez.

6

¶ 17    Paula Szum, a forensic scientist with the Illinois State Police Forensic Science Center in Chicago, testified that she had weighed and tested the brown substance found in the foil packet. To a reasonable degree of forensic scientific certainty, she found that it was 0.1 gram of a substance containing heroin.

¶ 18    In the defendant's case in chief, the defendant himself testified. He was 24 and had lived all those years in Centralia. During his police interview, he was "high" and "wasn't feeling too good" as the result of consuming five "Ecstasy pills" two days earlier. These pills also caused his mind to race, and they caused him to make "[b]ad choices." The high from five Ecstasy pills would last approximately one week. The defendant had been taking Ecstasy regularly, even daily, since he was 17. The defendant had a conviction for residential burglary. He committed that offense while in high school, and while under the influence of drugs. He considered himself an addict.

¶ 19    Amilia Rivera also testified for the defense. She was 28 and had known the defendant her entire life. In June 2016, she was the defendant's girlfriend. Rivera remembered the day the defendant was arrested. On that day, she borrowed a friend's SUV with the intention of driving to Family Dollar in Centralia in order to apply for a job. The defendant asked her for a ride, never saying anything about selling drugs. Rivera agreed, and together they went to Family Dollar, with Rivera driving. Upon arrival at Family Dollar, she went inside the store and filled out a job application. Upon exiting the store, she saw that police were searching the SUV.

¶ 20    On rebuttal by the State, Castleman testified that he had been trained in how to spot someone who was under the influence of a controlled substance. At the time of his interview with the defendant, Castleman said, he did not think that the defendant was high on Ecstasy, or any other drug.

7

¶ 21    At the defendant's request, the court gave the jury the option of finding the defendant guilty of the lesser-included offense of possession of a controlled substance. In the end, the jury found the defendant guilty of possession with intent to deliver a controlled substance within 500 feet of a public park, as charged. A sentencing hearing was scheduled.

¶ 22    Through counsel, the defendant filed a timely motion for new trial. The defendant alleged that the circuit court had erred in allowing the defendant to be impeached with a prior conviction, in permitting the jury to hear a portion of the defendant's police-interrogation video, and in denying his motion for a directed verdict of not guilty.

¶ 23    In September 2020, the circuit court held a brief hearing on the defendant's motion for new trial. The court denied the motion. Then, the cause proceeded to sentencing. The defendant testified that he was nearly 25 years old. He did not know his father's name, and his mother, he thought, died of a drug overdose. He had tried various drugs—among them, marijuana, cocaine, Ecstasy, and bath salts—and he considered himself an addict. At the time of the instant offense, he was under the influence of "ice." The defendant was the only witness to testify at the sentencing hearing. He did not make a statement in allocution. The State recommended a sentence of imprisonment for a term of 10 years. Defense counsel recommended imprisonment for four years. After listing what it considered relevant factors in mitigation and aggravation, the circuit court imposed a sentence of eight years, to be followed by MSR for two years. Finally, the court admonished the defendant about his appeal rights, and the defendant indicated his understanding.

¶ 24    The defendant appealed from the judgment of conviction. OSAD was appointed to represent him on appeal.

¶ 25                              ANALYSIS

¶ 26    This appeal is from a judgment of conviction.  As previously noted, the defendant's attorney on appeal, OSAD, has concluded that this appeal lacks merit, and has filed an *Anders* motion to withdraw as counsel, along with a supporting brief, and the defendant has not filed with this court any type of document in reply.  OSAD's supporting brief presents six potential issues on appeal.  As the following discussion will show, this court does not find any arguable merit in these six issues.

¶ 27    The first potential issue raised by OSAD in its *Anders* brief is whether the circuit court erred in sentencing the defendant.  The defendant was sentenced for possession with intent to deliver a controlled substance, which was a Class 1 felony when committed within 500 feet of a public park.  720 ILCS 570/407(b)(2), 401(d) (West 2018).  A Class 1 felony carried a nonextended term of imprisonment of 4 to 15 years, and an extended term of imprisonment of 15 to 30 years.  730 ILCS 5/5-4.5-30(a) (West 2018).  The defendant was eligible for extended-term sentencing due to his 2013 conviction for residential burglary, another Class 1 felony.  See *id.* § 5-5-3.2(b)(1).  However, the circuit court sentenced the defendant to only 8 years in prison—just over one-half of the nonextended maximum of 15 years, and less than one-third the extended maximum of 30 years.  If a sentence falls within the statutory range, it will not be disturbed on review absent an abuse of discretion.  *People v. Jones*, 168 Ill. 2d 367, 373-74 (1995).  As factors in mitigation, the court considered the defendant's age, drug use, mental health, cost of incarceration, and the influence of his brother.  See 730 ILCS 5/5-5-3.1(a) (West 2018) (factors in mitigation).  As aggravating factors, it considered the defendant's criminal history, the need to deter others, that he committed the instant felony while on MSR, and his refusal to accept responsibility for his conduct.  See *id.* § 5-5-3.2(a) (factors in aggravation).  In light of the court's well-considered judgment on

9

this matter, the defendant's sentence, which was within the statutory range, could not possibly represent an abuse of discretion.

¶ 28 The second potential issue raised by OSAD in its *Anders* brief is whether the defendant's constitutional rights against *ex post facto* laws were violated when the State amended the charge so as to reflect a post-offense change in the statutory language. The defendant was charged in June 2016 with the Class 1 felony of possession with intent to deliver less that one gram of a substance containing heroin, within 1000 feet of a school. See 720 ILCS 570/401(d), 407(b)(2) (West 2016). It was the proximity to a school that elevated this offense from a Class 2 felony to a Class 1 felony. See 720 ILCS 570/407(b)(2) (West 2016). Under the statute, the crime also would have been elevated to a Class 1 felony if it had been committed within 1000 feet of a public park, a church, a nursing home, or various other places, buildings, or structures listed in the statute. See *id.* In 2017, the General Assembly amended 720 ILCS 570/407(b)(2) so as to lower the distance from 1000 feet to 500 feet. See Pub. Act 100-3 (eff. Jan. 1, 2018). In November 2019, the State in this case responded to the statutory change by amending the information so as to charge the defendant with possession with intent to deliver less that one gram of a substance containing heroin, within 500 feet of a public park. See 720 ILCS 570/401(d), 407(b)(2) (West 2018).

¶ 29 The United States Constitution prohibits the States from passing any *ex post facto* law. U.S. Const., art. I, § 10. The Illinois Constitution also prohibits the passing of any *ex post facto* law. Ill. Const. 1970, art. I, § 16. A law is *ex post facto* if it is both (1) retrospective, *i.e.*, it applies to events that occurred prior to its enactment, and (2) disadvantageous to the defendant. *Fletcher v. Williams*, 179 Ill. 2d 225, 230 (1997). That is, a law is *ex post facto* " 'if it makes criminal an act that was innocent when done, if it increases the punishment for a previously committed offense, or if it alters the legal rules of evidence to make conviction easier.' " *People v. Ramsey*, 192 Ill.

10

2d 154, 157 (2000) (quoting *People v. Shumpert*, 126 Ill. 2d 344, 351 (1989)).  The prohibition against *ex post facto* laws "also assures that statutes give fair warning of their effect and permit individuals to rely on their meaning until explicitly changed."  *Fletcher*, 179 Ill. 2d at 229-30.

¶ 30    While it is true that the change in statutory language was applied retroactively to the defendant's conduct in June 2016, the defendant did not suffer a disadvantage as a result of the amended charge.  The defendant was found in possession with intent to deliver a controlled substance within 1000 feet of a school—and approximately 387 feet from a public park.  Under the statute in effect at the time of the offense, the defendant had notice that he was eligible for an enhanced penalty (a Class 1 penalty versus a Class 2 penalty) due to his being within 1000 feet of the school and of the park.  Under the amended statute, he was still eligible for the enhanced penalty due to being within 500 feet of the park.  As OSAD has observed in its *Anders* brief: "The retroactively applied statute concerning enhanced penalties for drug offenses committed in proximity to specific, enumerated buildings and facilities had no effect on the defendant's conduct and subsequent conviction.  He was on notice that possession with intent to deliver a controlled substance within 1000 feet of a park or school carried an enhanced penalty, yet committed the offense while within 500 feet of a park."  The defendant's conduct was not innocent at the time performed; the defendant was not subject to a greater penalty under the amended statute; and the amended statute did not alter the rules of evidence so as to make conviction easier.  The amended statute does not constitute an *ex post facto* law because the defendant was not disadvantaged by its application.

¶ 31    The third potential issue raised by OSAD is whether the circuit court complied with Illinois Supreme Court Rule 431(b) (eff. July 1, 2012) when it sought to determine whether jurors understood and accepted the four legal principles articulated therein.  Rule 431(b) reads as follows:

11

"The court shall ask each potential juror, individually or in a group, whether that juror understands and accepts the following principles: (1) that the defendant is presumed innocent of the charge(s) against him or her; (2) that before a defendant can be convicted the State must prove the defendant guilty beyond a reasonable doubt; (3) that the defendant is not required to offer any evidence on his or her own behalf; and (4) that if a defendant does not testify it cannot be held against him or her; however, no inquiry of a prospective juror shall be made into the defendant's decision not to testify when the defendant objects."

Ill. S. Ct. R. 431(b) (eff. July 1, 2012).

These four principles are commonly known as the *Zehr* principles. See *People v. Zehr*, 103 Ill. 2d 472, 477 (1984). The procedures for determining exactly how a court will question potential jurors, and exactly how it will determine whether they understand and accept the four principles, are left to the individual court.

¶ 32    Here, during *voir dire*, the circuit court asked the potential jurors, in two successive groups of 14, about each of the four principles. The court inquired about one principle at a time—asking, "Do you understand and accept," then stating the principle, and finally asking for a show of hands on whether anyone did not understand or accept the principle. No hand was raised concerning any of the four principles, by anyone in either group of 14. Rule 431(b) "plainly states that the court can ask the questions to the potential jurors as a group, and the rule does not require that their response be conveyed orally rather than by a show of hands." *People v. Birge*, 2021 IL 125644, ¶ 27. Given the court's clear articulation of all four principles, and the prospective jurors' understanding and accepting all four, no meritorious argument can be made that the circuit court failed to comply with Rule 431(b).

¶ 33    The fourth potential issue is whether the defendant was proved guilty beyond a reasonable doubt. In order to convict a defendant, the State must prove him guilty beyond a reasonable doubt. U.S. Const., amend. XIV; *In re Winship*, 397 U.S. 358, 367 (1970). The trier of fact determines the credibility of witnesses. *People v. Evans*, 209 Ill. 2d 194, 211 (2004). Where a conviction is challenged on appeal, a reviewing court will examine the evidence in the light most favorable to the State, and it will reverse the conviction only if no "rational trier of fact" could have found the "essential elements" of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *People v. Cunningham*, 212 Ill. 2d 274, 278 (2004).

¶ 34    The defendant was charged with possession with intent to deliver a controlled substance. The essential elements of this offense are (1) knowing possession (2) with the intent to deliver (3) a controlled substance (4) while within 500 feet of a public park. See 720 ILCS 570/401(d), 407(b)(2) (West 2018). The defendant himself admitted, during a taped police interview with Detective Castleman, that he had placed a foil packet containing heroin at the spot where it had been found by Castleman, with the intent of retrieving the packet after he had identified the person who was to receive it. Castleman had found the packet following a brief foot chase of the defendant. Castleman and a forensic scientist with an Illinois State Police crime lab testified about the chain of custody for the foil packet. The forensic scientist further testified about her testing of the brown substance contained in the packet, and her conclusion, to a reasonable degree of scientific certainty, that the substance contained heroin. Finally, Castleman described how he used a measuring wheel to determine that the approximate site of the heroin's discovery was 386 feet and 11 inches from a public park. Given the state of the evidence, a rational trier of fact certainly could have found the essential elements of the offense beyond a reasonable doubt. There could be no arguable merit to a challenge of the evidence's sufficiency.

13

¶ 35    The fifth potential issue is whether the circuit court erred in admitting, for impeachment purposes, evidence regarding the defendant's prior conviction for residential burglary.  The Illinois Rules of Evidence allow for attacking witness credibility with a prior conviction if that prior crime (1) was punishable by death or by imprisonment for more than one year, or (2) involved dishonesty or false statement regardless of the punishment unless "(3), in either case, the court determines that the probative value of the evidence of the crime is substantially outweighed by the danger of unfair prejudice."  Ill. R. Evid. 609(a) (eff. Jan. 1, 2011).  There is also a time consideration: evidence of a conviction is not admissible "if a period of more than 10 years has elapsed since the date of conviction or of the release of the witness from confinement, whichever is the later date."  Ill. R. Evid. 609(b) (eff. Jan. 1, 2011).  Here, the circuit court found that the defendant's 2013 conviction for residential burglary concerned honesty.  It did.  See *People v. Burba*, 134 Ill. App. 3d 228, 236 (1985) ("Convictions for burglary indicate dishonesty.").  The court also conducted a balancing test, and it found that "any unfair prejudicial effects would be minimal," thus exercising its discretion.  Any argument that the court erred in allowing the defendant to be impeached with his 2013 conviction for residential burglary, at his February 2020 trial for possession with intent to deliver, would lack merit.

¶ 36    Finally, the sixth potential issue raised by OSAD in its *Anders* brief is whether the circuit court erred in admitting evidence of the defendant's other crimes.  The evidence consisted of a portion of the defendant's recorded interview with his police interrogator, Detective Castleman, while the other crimes were the defendant's prior drug sales to undercover buyers.  After Castleman mentioned those prior drug sales, the defendant replied, "I can't sell this shit [*i.e.*, heroin] alone."  In general, other-crimes evidence is inadmissible to prove a defendant's propensity to commit crimes or a particular type of crime, but other-crimes evidence may be admissible "for

14

other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Ill. R. Evid. 404(b) (eff. Jan. 1, 2011). The State brought this issue to the court's attention via a motion *in limine*, and it argued that the other-crimes evidence showed intent and an absence of mistake. Despite the defendant's arguments in opposition, the court granted the motion and allowed the other-crimes evidence to be introduced. The evidence certainly could have been used for the purpose of showing the defendant's intent to sell heroin and the absence of mistake. (The defendant's defense at trial was that he was "high" on Ecstasy and had no idea what he was doing.) There was no error in admitting the other-crimes evidence, and any argument to the contrary would lack merit.

¶ 37                                 CONCLUSION

¶ 38    None of the six potential issues raised by OSAD in its *Anders* brief has any arguable merit. In addition, this court's examination of the entire record on appeal does not reveal any issue of merit. Accordingly, OSAD's motion for leave to withdraw is granted, and the judgment of conviction is affirmed.


¶ 39    Motion granted; judgment affirmed.

15