John V. Fox, Appellee, *vs.* Patrick Ryan, Appellant.

*Opinion filed June 16, 1909.*

1. Principal and agent—*broker is entitled to commissions if principal accepts the purchaser though latter defaults.* Where the owner of property accepts, without fraud or deception, the purchaser produced by the broker employed by the owner to sell the property, and a valid, enforcible contract of sale is made, the broker is entitled to his commissions notwithstanding the purchaser fails to carry out the contract and make the payments agreed upon.

2. Same—*rule where a broker produces purchaser but principal refuses to sell.* Where a broker employed to sell property produces a purchaser but the principal refuses to sell, the broker is entitled to his commissions if he is able to prove that the purchaser produced by him was ready, able and willing to carry out the contract and take the property upon the terms proposed by the principal.

3. Contracts—*what does not show that contract was an option.* Testimony by the owner of mining stock that the stock was contracted for at a fixed price, that the first payment was made and the others were "strung along, sixty, ninety days, six months to a year,—but there was only one payment made,—that first one," does not tend to show that the contract was an option but rather that it was an unconditional sale.

Appeal from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. Axel Chytraus, Judge, presiding.

M. Henry Guerin, for appellant:

A broker is not entitled to commission where a party whom he introduces as a buyer enters into a contract which gives him the option to withdraw by forfeiting the earnest money, which course he pursues. *Lawrence* v. *Rhodes,*

188 Ill. 96; *Ramsey* v. *West,* 31 Mo. App. 676; *Aigler* v. *Land Co.* 51 Kan. 718; *Kimberley* v. *Henderson,* 29 Md. 512; *Levy* v. *Koltman,* 32 N. Y. Supp. 241; *Bradford* v. *Limpur,* 10 Iowa, 35; *Zeidler* v. *Walker,* 41 Mo. App. 118.

The mere procuring of a person to enter into a contract for the purchase of property, unless such person was ready, willing and able to make the payments named in the contract and to make the deferred payments, if any were agreed upon, is not sufficient to entitle the broker to recover his commissions. *Lawrence* v. *Rhodes,* 188 Ill. 96.

ADLER, LEDERER & SCHOENBRUN, for appellee:

A broker is entitled to his commissions when he has furnished a purchaser with whom the principal enters into a valid contract, even though executory in form, either upon the terms previously proposed or upon modified terms agreed upon. *Wilson* v. *Mason,* 158 Ill. 304; *Henry* v. *Stewart,* 185 id. 448; *Hafner* v. *Herron,* 165 id. 242.

Such broker is entitled to his commissions even if the sale is never actually completed by reason of the default of one of the parties to the contract without fault of the broker. *Wilson* v. *Mason,* 158 Ill. 304.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

This is an action of assumpsit, begun in the superior court of Cook county, to recover $4000 commissions claimed by appellee, plaintiff below, to be due him for services as a broker in effecting a sale of mining stock for appellant. The declaration contained the common counts only, to which the general issue was pleaded.

The appellant and two other parties owned, in round numbers, 156,000 shares of stock in the Golden Star Mining Company, whose property was situated in Utah. The greater portion of the stock was owned by appellant. Appellee is a broker, with offices in the city of Chicago. Peter

L. Kimberly and Louis C. Houck owned the stock of the Annie Laurie Company's mine, which adjoined the Golden Star Mining Company's property. Appellant applied to appellee to negotiate a sale of the stock of the Golden Star Mining Company to Kimberly at the price of $1.35 per share. Appellee testified that appellant told him of the situation of the Annie Laurie and Golden Star properties; that the latter owned or controlled the apex of the Annie Laurie vein, and that it was important to that company to own the Golden Star Company's property. Appellee took the matter up with Kimberly and Houck and visited the latter's office a number of times. He testified the appellant told him if he would effect a sale of the stock he would pay him five per cent commission; that some time—two weeks or a month—after appellee's employment appellant came to him and told him they would not be able to get the price desired for the stock from Kimberly, and said, "but I will pay you $4000 if the deal goes through," to which appellee replied that would be satisfactory; that he would accept the $4000 and appellant could go ahead and close up the deal with Kimberly. Appellant denied this conversation about the $4000, but appellee was corroborated by another witness and the facts are settled by the judgment of the Appellate Court. Letters written by appellant to appellee, offered in evidence, show conclusively the employment of appellee by appellant to sell the stock to Kimberly or Houck, or both of them. Appellee testified that at the time of the talk about the $4000 appellant said he would carry on the deal with Kimberly direct. On April 4, 1901, appellant wrote appellee: "I closed deal with Kimberly last night on the basis I told you about. I leave for Salt Lake City at once, as the deal will have to be closed from that end. I expect to be back in about two weeks."

The contract of sale between appellant and Kimberly appears to have been prepared in Salt Lake City, and deposited, with the stock, in a bank in said city. It does not

appear that the appellee ever saw the contract, and it was afterwards destroyed by fire in the appellant's office in Salt Lake City. Appellant contends that it was not a sale outright but was an option contract, and was forfeited, pursuant to its terms, for non-compliance with it on the part of Kimberly.

The only testimony as to the terms of the agreement, offered at the trial, was that of appellant. Kimberly and Houck both died before the trial. Appellee insists that the contract with Kimberly was not an option contract but was a sale, and enforceable as such. As both parties have abstracted the testimony of appellant on the subject of the terms of the contract with Kimberly, and as they differ as to what his evidence proves, we have read it from the record. The appellant was placed on the stand to testify upon that question, by appellee. The substance of all that is material of his testimony, as we read it from the record, is as follows: The contract with Kimberly was made the latter part of March or the first part of April, 1901. The property contracted for by Kimberly was the stock of the Golden Star Mining Company, consisting of about 156,000 shares, and the price to be paid was $200,000. When interrogated as to how the payment was to be made, the witness answered: "In payments; it ran along; there was $5000 paid down and the balance was to be paid—the next payment, I think, was ninety days and six months." The payments were to be made at McCormick's Bank, in Salt Lake City. In answer to the question whether appellant could remember the substance of any other provisions of the contract, he stated: "That was the substance; that was the consideration, and the payments were to be made as I have stated,—strung along, sixty, ninety days, six months to a year; but there was only one payment made,—that first payment." On behalf of himself, appellant testified that he entered into a contract with Kimberly after he met appellee, but that the terms of the contract were not carried

out; that $5000 was paid in cash in Salt Lake City at the McCormick Bank, where the shares of stock were held in escrow. He testified no further payments were made, and that the $5000 paid was forfeited "under the terms of the contract."

We find nothing further in the testimony purporting to give the terms of the contract between appellant and Kimberly, but in his testimony appellant called it an option contract. The terms of the agreement, so far as disclosed by the evidence, do not show that it was an option contract. On the contrary, the transaction appears to have been an unconditional sale.

Appellant insists that by the terms of the agreement for commissions, as testified to by appellee, he was to effect a sale and that he was to be paid $4000 if the deal went through, and that this bound him to produce a purchaser who not only entered into a contract to purchase, but the contract must have been complied with and the money paid for the property. If a valid, enforceable contract was made this constituted a sale and was a compliance with the agreement between appellant and appellee.

Appellant contends that the court erred in refusing to hold the first, seventh and ninth propositions of law asked on his behalf and in modifying the second and third. The first proposition asked the court to hold that there was no right of recovery under the evidence in the case. The seventh was a statement that a broker was not entitled to commissions for procuring a purchaser who enters into a contract with the seller which gives the purchaser the option to withdraw by forfeiting the earnest money, where the purchaser pursues that course. We think these propositions were correctly refused. The contract between appellant and Kimberly was not an option contract and the seventh proposition was not applicable.

The second proposition asked by the appellant was, that merely procuring a person to enter into a contract for the

purchase of property does not entitle a broker to commissions unless such person was ready, willing and able to make the payments, including deferred payments, named in the contract. The court modified this proposition by adding, "unless the defendant accepted the purchaser." The proposition as modified was correct. Where a broker is employed to sell property by the owner, if he produces a purchaser within the time limited by his authority who is ready, willing and able to purchase the property upon the terms proposed by the seller he is entitled to his commissions, even though the seller refuses to perform the contract on his part. In such case, however, it is necessary for the broker to prove the readiness, willingness and ability of the purchaser to take the property on the terms proposed. But where the seller accepts the purchaser and enters into a valid contract of sale with him, the broker's commission is earned whether the purchaser subsequently fails to perform his contract and make the payments agreed upon or not. There are cases in other States holding otherwise, but in *Wilson* v. *Mason,* 158 Ill. 304, this court refused to follow thoses cases, denominating them as extreme and exceptional, and said, on page 311: "The true rule is, that the broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale and the seller refuses to compel performance, the broker ought not to be deprived of his commissions. He has done all that he can do when he produces a party who is able, and in binding form offers, to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So where the agreement of the real estate broker is to make a sale, his commission

is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase."

The rule as announced in *Carter* v. *Webster,* 79 Ill. 435, is, that when a broker has presented to his principal a purchaser whom the principal is willing to and does accept, and they enter into a contract of sale, the broker's commissions are earned. The same rule is announced in *Coleman* v. *Meade,* 13 Bush, 358, *Ratts* v. *Shepherd,* 14 Pac. Rep. 496, *Love* v. *Miller,* 53 Ind. 294, and *Wray* v. *Carpenter,* 16 Colo. 271.

The vendor of property is not required to accept a purchaser without opportunity for investigation as to his ability to comply with the terms of the contract, but where he does accept such purchaser, uninfluenced by fraud or misrepresentation, it is a determination by him of the purchaser's ability to perform his contract, and if the purchaser afterwards fails to perform it, the seller cannot defeat the broker's commissions on the ground that the purchaser was not able to buy the property. A large collection of cases are cited as so holding, in an exhaustive note to *Lunney* v. *Healey,* 44 L. R. A. 616. This rule applies with peculiar force in this case, for the proof shows that appellant knew Kimberly for several years before the contract of sale was made; that Kimberly and Houck owned the principal part of the stock in the Annie Laurie mine, adjoining the Golden Star, and it was to Kimberly, or to Kimberly and Houck, appellant directed appellee to make the sale. There is no proof in the record that Kimberly was able to comply with the terms of his contract, neither is there any proof that his failure to comply with it was the result of financial inability. We have above set out the substance of the evidence on this question, and it does not appear but that the $5000 paid by Kimberly was retained by appellant and the contract annulled by mutual agreement between them, unin-

fluenced by the financial ability of Kimberly. Appellee testified that after he had been notified by appellant that the deal with Kimberly had been abandoned at appellant's request but that he keep in touch with Kimberly for the purpose of promoting the appellant's interests he continued to interview Kimberly, seeing him as·many as fifty times about the property.

Patrick Conley, one of the shareholders in the Golden Star Mining Company, testified that in June, 1902, Kimberly took up the subject of the purchase of the stock with him in St. Paul, where Conley then resided. Afterwards, in October of the same year, a sale was consummated to Kimberly for $1.50 per share and an additional $10,000, and interest thereon for three months, which the owners of the stock of the Golden Star Mining Company owed to the McCormick Bank. We do not think appellee's right to recover in this case is dependent upon his being the procuring cause of the sale in October, 1902. We only refer to this evidence as showing a possible motive for appellant's willingness to abandon his contract of 1901 with Kimberly, as a year and a half later the stock was sold for a materially increased sum, after allowing for the expenditures the appellant testified were made upon the property after the abandonment of the contract of 1901 and before the sale in 1902. The ninth refused and third modified propositions had reference to a liability of appellant for commissions· for the sale made in October, 1902, and we are of opinion the court committed no error in refusing the one and modifying the other.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*