FIRST DIVISION

June 30, 1997

No. 1-96-0410

STEPHEN L. WINTERNITZ, INC., ) Appeal from the

 ) Circuit Court 

Plaintiff-Appellant, ) of Cook County. 

)

v. ) 

)

NATIONAL BANK OF MONMOUTH ) Honorable  

) DAVID LICHTENSTEIN,

 Defendant-Appellee. ) Judge Presiding.

JUSTICE GALLAGHER delivered the opinion of the court:

Plaintiff Stephen L. Winternitz, Incorporated (Winternitz) filed a complaint seeking damages from defendant National Bank of Monmouth (Bank) for breach of a brokerage contract.  The first amended complaint (complaint) alleges that defendant agreed to pay a commission to plaintiff in the event that defendant sold certain manufacturing equipment to a purchaser produced by plaintiff.  Defendant moved to dismiss the Complaint pursuant to section 2-619.1 of the Illinois Code of Civil Procedure (735 ILCS 5/2-619.1 (West 1994)), and the trial court granted defendant's motion.  Plaintiff appealed, and we now reverse and remand.

The facts of the case, as alleged in the complaint, are relatively straightforward.  American Pro Latex defaulted on a loan obtained from defendant Bank.  To recoup some of its losses, the Bank sought to liquidate the loan collateral--manufacturing equipment that produced latex gloves.  The Bank originally hired Winternitz to appraise the equipment for public auction; subsequently, the Bank and Winternitz orally agreed to an arrangement whereby the Bank would pay to Winternitz an 8% commission if Winternitz could produce a single buyer for all of the equipment.  On December 29, 1993, the parties confirmed their agreement in writing when Winternitz located a buyer, Safeskin Corporation (Safeskin).  The written contract, drafted by the Bank and faxed to Winternitz, provided in its entirety:

"The National Bank will pay you a commission of 8% of the purchase price if it sells the equipment of American Pro Latex to Safeskin Corporation or another buyer whom you produce."

On January 14, 1994, Safeskin submitted a bid to purchase the American Pro Latex equipment for $783,000 and promised the Bank $50,000 as a deposit by January 17, 1994.  The Bank accepted Safeskin's offer in a letter dated January 17, 1994.  However, Safeskin failed to pay the balance of the purchase price.  This failure ultimately forced the Bank to sell the equipment at public auction for substantially less than the contract price.  The Bank then filed suit against Safeskin on the contract, seeking damages equal to the difference between the sale price and the contract price, plus expenses.  That case is now pending in federal court.

Meanwhile, Winternitz filed a three-count complaint against the Bank.  In addition to costs and attorneys fees, each count sought differing amounts of damages.  Count I alleged breach of the brokerage contract and sought $62,640, the full value of plaintiff's 8% commission.  Alternatively, count II sought 8% of the earnest money deposit retained by the Bank ($4,000) under a theory of 
quantum
 
meruit
.  Count III sought 8% of any moneys that the Bank recovers in its lawsuit against Safeskin, also under a theory of 
quantum
 
meruit
.  As noted above, the trial court dismissed plaintiff's complaint pursuant to section 2-619.1 of the Code of Civil Procedure.  On appeal, plaintiff requests that this court reverse and remand with directions to order the defendant to answer the complaint.

Section 2-619.1 of the Code of Civil Procedure allows for a party to combine in one motion a section 2-615 motion to dismiss for substantially insufficient pleadings with a section 2-619 motion for involuntary dismissal based upon defects or defenses.  735 ILCS 5/2-619.1 (West 1994).  When ruling on a motion to dismiss under either section 2-615 or section 2-619 of the Code, the trial court must interpret all pleadings and supporting documents in the light most favorable to the nonmoving party; the court should grant the motion only if plaintiff can prove no set of facts that would support a cause of action.  
Toombs v. City of Champaign
, 245 Ill. App. 3d 580, 615 N.E.2d 50 (1993).  Because this process does not require the appellate court to weigh facts or determine credibility, the court applies a 
de
 
novo
 standard of review.  
Toombs
, 245 Ill. App. 3d at 583, 615 N.E.2d at 51; 
Weatherman v. Gary-Wheaton Bank
, 286 Ill. App. 3d 48, 63, 676 N.E.2d 206, 216 (1996).  

Plaintiff argues that it fulfilled its obligation under the brokerage contract and earned its commission by producing a ready, willing and able buyer in Safeskin.  In support of this proposition, plaintiff cites 
Fox v. Ryan
, 240 Ill. 391, 88 N.E. 974 (1909), as well as other more recent decisions, including 
Hallmark & Johnson Properties, Ltd. v. Taylor
, 201 Ill. App. 3d 512, 559 N.E.2d 141 (1990), and 
Bychowski v. ERA Tempo Realty, Inc.
, 274 Ill. App. 3d 1093, 655 N.E.2d 292 (1995).  We agree with plaintiff and find that our decision in 
United Investors, Inc. v. Tsotsos
, 132 Ill. App. 3d 175, 477 N.E.2d 40 (1985), controls the outcome of this appeal.  

This court adopted an argument nearly identical to the one plaintiff offers here in 
United Investors
, a case not cited in the briefs of either party.  In
 that case, the plaintiff brought suit to recover a brokerage commission allegedly due under a real estate listing agreement, although the record indicated that the defendant appointed the plaintiff to locate a purchaser for defendant's business.  132 Ill. App. 3d at 176-77, 477 N.E.2d at 41.  The defendant eventually entered into a contract with a prospective purchaser supplied by the plaintiff, although they never consummated their transaction.  The trial court granted summary judgment in favor of the plaintiff.  132 Ill. App. 3d at 177, 477 N.E.2d at 41.  On appeal, we stated that "a sale need not be consummated for a real estate broker to recover his commission."  132 Ill. App. 3d at 178, 477 N.E.2d at 42.  We went on to hold: "Where a seller of real estate enters into an enforceable contract of sale with a purchaser procured by a broker, the readiness, willingness and ability of the purchaser is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed."  
United Investors, Inc. v. Tsotsos
, 132 Ill. App. 3d at 178, 477 N.E.2d at 42.  Despite this holding, we reversed and remanded the case for a determination of whether the plaintiff had forfeited its commission by violating the brokerage agreement.  132 Ill. App. 3d at 180, 477 N.E.2d at 43.

As support for the holding in 
United Investors
, we cited to our supreme court's opinion in 
Fox v. Ryan
, 240 Ill. 391, 88 N.E. 974 (1909).  In that case, the defendant, who owned stock in a mining company, employed the plaintiff broker to negotiate the sale of the company's stock to another mining company.  240 Ill. at 392-93, 88 N.E. at 975.  When the broker's negotiations with the prospective purchasers bogged down, the defendant completed the negotiations himself, although he still promised to pay the broker $4,000 in the event a deal was made.  Ultimately, the defendant and purchasers struck a deal, whereby the purchasers contracted to make an initial downpayment and pay the balance in installments.  240 Ill. at 393-94, 88 N.E. at 975.  The purchasers defaulted on the deferred payments, however, and the sale never closed.  240 Ill. at 395, 88 N.E. at 976.  The supreme court, holding that the broker was entitled to his commission, stated:

"'The true rule is, that the broker is entitled to his commissions if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract.  If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale and the seller refuses to compel performance, the broker ought not to be deprived of his commissions.'"  240 Ill. at 396, 88 N.E. at 976, quoting 
Wilson v. Mason
, 158 Ill. 304, 311, 42 N.E. 134, 136 (1895).

The court affirmed the trial court's judgment in favor of the plaintiff broker.  240 Ill. at 398, 88 N.E. at 977. 

We feel that 
United Investors
 accurately states the rule under Illinois law, as expressed in 
Fox v. Ryan
.  Although each of those cases dealt with the sale of a business, we find that the reasoning found therein readily extends to the facts of this case, which deals with the sale of certain assets of a business.  The complaint alleges (1) that a brokerage contract existed between plaintiff and defendant; (2) that, pursuant to the terms of that contract, plaintiff procured Safeskin, a prospective purchaser for defendant's equipment; and (3) that defendant entered into a contract with Safeskin.  Defendant correctly points out that the complaint fails to allege that defendant entered into a "valid, binding, and enforceable contract" with Safeskin.  However, the complaint does allege that defendant filed suit against Safeskin seeking damages for breach of contract.  Considering these pleadings in the light most favorable to plaintiff, we find that the complaint adequately states a cause of action and that the trial court erred in granting defendant's motion to dismiss.

Defendant argues that the actual sale of the manufacturing equipment constituted a condition precedent to its obligation to pay plaintiff.  Because Safeskin never consummated the transaction, defendant asserts that no "sale" ever took place.  Defendant also argues that the true focus is not whether plaintiff produced a ready, willing and able buyer but, rather, whether plaintiff was the procuring cause of a transaction between the Bank and Safeskin, citing 
Modern Tackle Co. v. Bradley Industries, Inc.
, 11 Ill. App. 3d 502, 297 N.E.2d 688 (1973).  Defendant reasons that plaintiff cannot be the procuring cause of a transaction if no transaction took place.  We address each of defendant's assertions in turn.

First, assuming a contract existed between plaintiff and defendant, we hold that plaintiff has adequately alleged that a "sale" occurred.  Our supreme court has stated that "[i]f a valid, enforceable contract was made, this constituted a sale and was a compliance with the agreement between [seller] and [broker]."  
Fox v. Ryan
, 240 Ill. at 395, 88 N.E. at 976.  

Defendant argues that the plain and obvious meaning of the contract's "if it sells" language required a consummated transaction to entitle plaintiff to its commission.  The Bank, however, cites no case authority supportive of its interpretation, and we decline to accept it.  Yet even if we did accept defendant's construction of the "if it sells" language, it would merely inject ambiguity into the contract.  A contract is ambiguous if the language is susceptible to more than one meaning.  
Krantz v. Chessick
, 282 Ill. App. 3d 322, 329, 668 N.E.2d 77, 81 (1996).  This contract--a minimalist's delight--was drafted solely by defendant Bank and should be construed strongly against the Bank.  
Duldulao v. Saint Mary of Nazareth Hospital Center
, 115 Ill. 2d 482, 493, 505 N.E.2d 314, 319 (1987).  Accordingly, even were we to accept defendant's interpretation of the brokerage contract as reasonable, we would still hold that count I of the complaint sufficiently states a cause of action for breach of the alleged brokerage contract.

Furthermore, we believe that our holding is consistent with 
Modern Tackle Co. v. Bradley Industries, Inc.
, 11 Ill. App. 3d 502, 297 N.E.2d 688 (1973), as well as the other cases distinguishing between the rights and duties of a real estate broker and that of a "finder" or "business opportunity broker."  See 
Ruskin v. Rodgers
, 79 Ill. App. 3d 941, 399 N.E.2d 623 (1979); 
Ehrman v. Cook Electric Co.
, 630 F.2d 529 (7th Cir. 1980); 
Hennessey v. Schmidt
, 521 F.2d 1282 (7th Cir. 1975).  A "finder" has been defined as an intermediary who finds, introduces and brings together two parties to a business opportunity.  
Ruskin
, 79 Ill. App. 3d at 960, 399 N.E.2d at 637.  While a broker also brings parties together, the broker plays a role in the ultimate negotiations of sale; a finder leaves the negotiations up to the principals themselves.  
Ruskin
, 79 Ill. App. 3d at 961, 399 N.E.2d at 637; 
Modern Tackle
, 11 Ill. App. 3d at 507, 297 N.E.2d at 692; 
Business Development Services, Inc. v. Field Container Corp.
, 96 Ill. App. 3d 834, 842, 422 N.E.2d 86, 93 (1981).  The 
Modern Tackle
 court also held that, in order for a finder or business opportunity broker to collect a commission, the finder must be the proximate or procuring cause of an eventual transaction.  
Modern Tackle
, 11 Ill. App. 3d at 507, 297 N.E.2d at 693.

While it does appear, on this record, that plaintiff's role approximated that of a finder or business opportunity broker, it also appears that plaintiff was the proximate or procuring cause of the ultimate transaction.  Here, the alleged contract between plaintiff and defendant provided that plaintiff would receive an 8% commission if defendant sold the equipment to Safeskin.  As discussed above, defendant allegedly entered into a contract with Safeskin, a contract which constituted a "sale" under 
Fox v. Ryan
 and 
United Investors
.  Under the facts as alleged in this complaint, plaintiff deserves the opportunity to prove its allegations that a brokerage contract existed between plaintiff and defendant and that defendant entered into a valid, binding and enforceable contract with Safeskin--entitling plaintiff to its commission under the alleged brokerage contract. 

Indeed, this court rejects defendant's claims that no sale ever occurred between it and Safeskin, particularly as defendant seeks to enforce that contract of sale in federal court.  Defendant's contradictory positions might very well raise questions of judicial estoppel, although this is a question we need not consider at this point.  See generally 
Bidani v. Lewis
, 285 Ill. App. 3d 545, 675 N.E.2d 647 (1996) (doctrine of judicial estoppel precludes one party from adopting contrary positions in consecutive legal proceedings).

We now consider counts II and III, plaintiff's 
quantum
 
meruit
 claims.  Plaintiff argues that it is entitled to plead these counts in the alternative, in the event that it fails to establish that an express brokerage contract existed between plaintiff and defendant.  
We agree.  "It is permissible to argue in the alternative, even though such arguments are based upon inconsistent facts."  
Hillblom v. Ivancsits
, 76 Ill. App. 3d 306, 311, 395 N.E.2d 119, 122 (1979).  On remand, plaintiff may establish that the contract between defendant and Safeskin was a valid, binding, and enforceable agreement.  If so, plaintiff will have demonstrated that it rendered valuable services from which defendant derived some financial benefit.  "[A] plaintiff may recover under 
quantum
 
meruit
 where he fails to establish the express contract but does show that services were rendered. (Emphasis added.)"  
Business Development Services, Inc.
, 96 Ill. App. 3d at 843, 422 N.E.2d at 94.  In light of our analysis, we reinstate counts II and III of the complaint.

Defendant counters that because it has not challenged the existence of an express brokerage contract, plaintiff cannot recover under a theory of 
quantum
 
meruit
, citing 
Protestant Hospital Builders Club v. Goedde
, 98 Ill. App. 3d 1028, 1031, 424 N.E.2d 1302, 1305 (1981).  
Protestant Hospital
 does not control here, because in that case both parties stipulated at trial that an express contract existed.  98 Ill. App. 3d at 1029-30, 424 N.E.2d 1304.  This appeal comes to us from the trial court's dismissal of the complaint; on remand, defendant may yet dispute the existence of an express brokerage contract.  

Defendant further contends that, because it did not consummate its transaction with Safeskin, no "sale" occurred and it received no financial benefit from the services rendered by plaintiff.  We rejected this argument above, and we reject it again here.  

In conclusion, we reverse the trial court's dismissal of the first amended complaint and remand this case to the trial court with directions that defendant must answer the complaint.  On remand, if plaintiff proves that defendant entered into a valid, binding and enforceable contract with Safeskin, then a "sale" occurred.  If a "sale" occurred, then plaintiff should be entitled either to its commission or the reasonable value of the services it rendered to defendant, depending upon whether an express brokerage contract existed between the parties.

Reversed and remanded.

CAMPBELL, P.J., and BUCKLEY, J., concur.