2-00-0906

No. 2--00--0906
    
           

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

GARY McGEE AND CHRISTOPHER RICKARD,

Plaintiffs-Appellants,

v.

DONALD SNYDER, LILA KOCHES, and JAMES UTLEY,

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

Appeal from the Circuit Court of Lee County.

No.  99--MR--45

Honorable

Thomas M. Magdich,

Judge, Presiding.

JUSTICE GROMETER delivered the opinion of the court:

Plaintiffs, Gary McGee and Christopher Rickard, brought this action pursuant to section 1983 of the Civil Rights Act (42 U.S.C. §1983 (1994)) in the circuit court of Lee County.  They allege that defendants, 
Donald Snyder, Lila Koches, and James Utley,
 have denied them certain good-conduct credits to which they are entitled, resulting in plaintiffs' having to serve increased sentences.  Snyder is the Director of the Illinois Department of Corrections (DOC), Koches is its chief record officer, and Utley is the record office supervisor for the Dixon Correctional Center.  The circuit court granted defendants' motion to dismiss, and plaintiffs now appeal.  For the reasons that follow, we affirm in part, reverse in part, and remand this cause for further proceedings.

I. BACKGROUND

Plaintiffs are currently incarcerated at the Dixon Correctional Center.  McGee was convicted of several felony offenses on February 1, 1978.  He was sentenced to concurrent sentences, the longest being 40 to 60 years' imprisonment.  Rickard was convicted of a felony on March 15, 1980, and ultimately given a sentence of 40 to 80 years' imprisonment.  At the time plaintiffs committed their offenses, Illinois was using a system of indeterminate sentencing, where a defendant was sentenced to a minimum term, which was the date the defendant would become eligible for parole, and an maximum term, which was the date the defendant would be released if not paroled.  
Johnson v. Franzen
, 77 Ill. 2d 513, 516 (1979).  Both plaintiffs' convictions resulted from conduct occurring prior to the legislature's amending Illinois' sentencing law on February 1, 1978 (see Ill. Rev. Stat. 1979, ch. 38, par. 1005--8--1).  To understand plaintiffs' claim, it is necessary to understand this change in the law and how it affected a prisoner's ability to earn good-conduct credits.

Prior to this change, prisoners were eligible for two types of good-conduct credits: statutory good-conduct credits (SGCs) and compensatory good-conduct credits (CGCs).  SGCs were awarded at a progressive rate, beginning with one month for the first year, two months for the second year, and so on until a maximum yearly award of six months was reached during the sixth year.  
Barksdale v. Franzen
, 700 F.2d 1138, 1139 (7th Cir. 1983).  Additionally, prisoners could earn 7½ days of CGCs each month during their entire sentence.  
Rogers v. Prisoner Review Board
, 181 Ill. App. 3d 1039, 1042 (1989).  Thus, beginning in the sixth year, prisoners could effectively earn day-for-day credit from SGCs while continuing to earn an additional three months per year from CGCs.

Following the change, prisoners were entitled to day-for-day  credit at the rate of six months per year during their entire sentence.  
Rogers
, 181 Ill. App. 3d at 1042.  CGCs were no longer available.  
Rogers
, 181 Ill. App. 3d at 1042.  Depending on an individual prisoner's situation, either system could be more beneficial.  
Rogers
, 181 Ill. App. 3d at 1042.  The DOC adopted a policy of applying whichever system was more favorable to a prisoner in determining the prisoner's sentence.  
Williams v. Irving
, 98 Ill. App. 3d 323, 325-26 (1981).  Good-conduct credits pertaining to time served prior to February 1, 1978, were calculated using the pre-1978 system, and the most favorable system was used for time served thereafter.  
Williams
, 98 Ill. App. 3d at 325-26.

On March 26, 1980, the DOC calculated McGee's sentence using both systems and concluded that the new one was more favorable.  In a hearing on defendants' motion to dismiss, Koches testified that under the pre-1978 system, McGee would have had a minimum release date of January 30, 1989, and a maximum of January 30, 2009.  Under the new system, McGee's minimum release date was October 30, 1987, and his maximum was October 30, 2007.  Koches stated that the DOC was required to perform this recalculation in response to our supreme court's decision in 
Johnson
, 77 Ill. 2d 513, which held that an inmate was entitled to have his sentence calculated under the new system where it was more beneficial for him.  Koches testified that a one-time recalculation was mandated and that prisoners were not entitled to have their sentences recalculated subsequently to determine if the pre-1978 system would be more favorable.  She further explained that at the time of the recalculation the DOC could not predict whether a prisoner would earn CGCs in the future, so CGCs were not considered during the recalculation.  Koches noted that McGee's maximum release date was actually August 11, 2006, due to additional credits earned from other sources.

Koches also explained that Rickard's sentence was recalculated applying day-for-day good-conduct credits from the date he was taken into custody.  She stated that this recalculation was performed in response to a United States Supreme Court case that held that sentences must be calculated awarding good-conduct credits available at the time of the commission of the offense.  See 
Weaver v. Graham
, 450 U.S. 24, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981).

In their complaint, plaintiffs allege that, due to these recalculations, McGee must serve an additional five years and Rickard must serve an additional seven years.  Defendants moved to dismiss pursuant to section 2--619.1 of the Civil Practice Law (735 ILCS 5/2--619.1 (West 1998)), arguing that plaintiffs' complaint failed to state a claim and that defendants were entitled to qualified immunity.  In a brief order, the trial court adopted Koches' testimony that McGee's release date was August 11, 2006, and dismissed the complaint.

II. ANALYSIS

Plaintiffs contend that their complaint adequately stated a claim upon which relief could be granted.  They assert that defendants' conduct amounted to a violation of the 
ex post facto
 clauses of the state and federal constitutions.  See U.S. Const., art. I, §9; Ill. Const. 1970, art. I, §16.  Defendants reply that the trial court's decision was correct and, in addition, plaintiffs' claim is barred by the statute of limitations.  Defendants also assert that they are entitled to qualified immunity.  We will address these contentions serially.  Because this action comes to us following the dismissal of plaintiffs' complaint pursuant to section 2--619.1 of the Civil Practice Law (735 ILCS 5/2--619.1 (West 1998)), review is 
de novo
.  
Stephen L. Winternitz, Inc. v. National Bank of Monmouth
, 289 Ill. App. 3d 753, 755 (1997).  All pleadings and other evidence available must be viewed in the light most favorable to the plaintiff, and the motion should be denied unless no set of facts exists that would allow the plaintiff to obtain relief.  
Stephen L. Winternitz, Inc.
, 289 Ill. App. 3d at 755.

Defendants' contention that we should not consider Rickard's claim because McGee, a nonlawyer, signed Rickard's name to the notice of appeal and main brief need not detain us long.  Supreme Court Rule 137 governs signatures on papers filed with the court.  155 Ill. 2d R. 137.  This rule provides that unrepresented parties shall sign pleadings, motions, or other papers in their own name.  155 Ill. 2d R. 137.  Sanctions for the failure to comply with the signature requirement are discretionary.  155 Ill. 2d R. 137; 
Bachmann v. Kent
, 293 Ill. App. 3d 1078, 1084 (1997).  We conclude that, even if a technical violation of this rule has occurred, defendants have suffered no prejudice and no sanction is warranted.

Before turning to the merits of this appeal, we briefly address Rickard's claim that if he had committed his offense a mere six hours later he would have received a less severe sentence due to a change in the sentencing law.  While the fact that the law became more lenient, according to Rickard, shortly after he committed his offense may be unfortunate from his point of view, this change provides no basis for granting him relief.  Quite simply, the law in effect at the time of the offense governs.  
People v. Gulley
, 162 Ill. App. 3d 545, 549 (1987).  As such, this claim is meritless.

A. 
Ex Post Facto
 Violation

Plaintiffs argue that the day-for-day system currently being used to calculate their sentences is less favorable than its predecessor, which was in effect at the time they committed their offenses.  As a result, according to plaintiffs, the 
ex post facto
 clauses of the state and federal constitutions have been violated.  See U.S. Const., art. I, §9; Ill. Const. 1970, art. I, §16.  These clauses serve both to restrain legislatures from arbitrary and vindictive lawmaking and to provide individuals with fair notice of acts that give rise to criminal sanctions.  
People v. Malchow
, 193 Ill. 2d 413, 418 (2000).  The 
ex post facto
 clause of our state constitution provides protection coincident with that of the federal constitution.  
Barger v. Peters
, 163 Ill. 2d 357, 360 (1994).  A law is 
ex post facto
 if it is both retroactively applied and disadvantageous to a defendant.  
People v. Franklin
, 135 Ill. 2d 78, 107 (1990).  A law that disadvantages a defendant is one that either criminalizes an act that was innocent at the time it was done, increases the punishment for a previously committed crime, or alters the rules of evidence in a manner that makes conviction easier.  
Franklin
, 135 Ill. 2d at 107.

Regarding those that increase punishment, a law that results in merely an attenuated possibility of such an increase does not violate the prohibition against 
ex post facto
 laws.  
Fletcher v. Williams
, 179 Ill. 2d 225, 234-35 (1997).  However, the law need not impair a vested right before a violation will occur.  
Fletcher
, 179 Ill. 2d at 230.  Our supreme court has noted:

"Critical to relief under the 
ex post facto
 clauses is not an individual's right to less punishment, but rather the lack of governmental restraint and fair notice when the legislature increases punishment beyond what was prescribed when the crime was committed.  Thus, even if a statute merely alters penal provisions accorded by the grace of the legislature, it can nevertheless violate the 
ex post facto
 prohibition."  
Fletcher
, 179 Ill. 2d at 230, citing 
Weaver v. Graham
, 450 U.S. 24, 29-30, 67 L. Ed. 2d 17, 23-24, 101 S. Ct. 960, 964-65 (1981).

Thus, if a law substantially impairs the possibility of reducing actual prison time, an 
ex post facto
 violation occurs.  
Barger
, 163 Ill. 2d at 362.  Further, "[i]t is entirely inconsequential that capitalizing on the opportunity may depend on an inmate's success in staying out of trouble or attaining other goals."  
Barger
, 163 Ill. 2d at 362.

Applying these principles to the instant case, it is apparent that facts exist from which an 
ex post facto
 violation can be inferred.  It is undisputed that the day-for-day system became law after plaintiffs committed the offenses for which they are now incarcerated; therefore, the law is being applied retroactively.  At issue, then, is whether the day-for-day system is disadvantageous to plaintiffs.  Under the pre-1978 system, plaintiffs could have been earning three months of CGCs per year since 1978.  As of February 2001, their sentences could have been reduced by as much as 69 months.  These CGCs would more than offset any reduction in good-conduct credits plaintiffs would suffer as a result of applying the SGCs system instead of the day-for-day system.  Because SGCs were awarded at a progressive rate during the first five years (see 
Brown v. Washington
, 311 Ill. App. 3d 729, 734 (2000)), plaintiffs could earn up to 15 months less of SGCs than the 30 months they could earn during this period under the day-for-day system.  Obviously, the 69-month credit would be more favorable.  Hence, the day-for-day system is disadvantageous to plaintiffs.  See 
Weaver
, 450 U.S. at 33, 67 L. Ed. 2d at 26, 101 S. Ct. at 967 ("On its face, the statute reduces the number of monthly gain-time credits available to an inmate who abides by prison rules and adequately performs his assigned tasks.  By definition, this reduction in gain-time accumulation lengthens the period that someone in petitioner's position must spend in prison").

Defendants contend, however, that, at the time they recalculated plaintiffs' sentences, the day-for-day system was more favorable.  This conclusion is apparently based on defendants' being unable to predict whether plaintiffs would earn CGCs subsequent to the recalculation and thus not taking those credits into account in comparing the two systems.  In McGee's case, for example, sufficient CGCs had not accrued to offset the beneficial effect of applying the day-for-day system rather than the SGCs system during the early years of his incarceration.  However, at the time of the recalculation, the potential for earning CGCs over the next 20 years or more was discounted.  

According to defendants, our supreme court's decision in 
Johnson
, 77 Ill. 2d 513, required that they recalculate all sentences for those to whom either system could apply and utilize the one that was most favorable to each individual prisoner.  We agree with this interpretation of 
Johnson
.  However, defendants further contend that they were required to perform this recalculation only once, applying the system that was most favorable at that time, and that plaintiffs are entitled to no further recalculations.  Defendants cite no authority in support of the latter propositions, and our research has uncovered none as well.

In 
Johnson
, our supreme court held that a prisoner whose sentence was being calculated using the pre-1978 was entitled to day-for-day credit where the day-for-day system was more favorable.  
Johnson
, 77 Ill. 2d 513.  Nowhere does the opinion mention a one-time recalculation of sentences.  Nor does it hold that sentences must be calculated using the system most favorable as measured in 1980 or some other arbitrary point in time.  If a comparison of the two systems at the present time would show that the pre-1978 system is more favorable to plaintiffs, nothing in 
Johnson
 precludes making a new calculation.

Moreover, we find no support for the DOC's refusal to take into account the potential for future CGCs when it recalculated plaintiffs' sentences.  This refusal stemmed from defendants' asserted inability to know whether plaintiffs would have earned CGCs subsequent to the time they recalculated plaintiffs' sentences.  Initially, we note that the potential for earning CGCs has been considered in determining whether the pre-1978 system or the new system was more beneficial to an inmate.  See 
Rogers
, 181 Ill. App. 3d at 1043 ("The defendants determined that the continued application of the pre-1978 system would be more beneficial to [the plaintiff], because after 1978 he would receive six months of statutory good-time credit for each year served, which is in effect 'day-for-day' credit, plus he would receive up to 90 days per year compensatory good-time credit for work participation, which is unavailable under the post-1978 system").  In fact, in order to avoid an 
ex post facto
 violation, the potential for CGCs must be taken into account.  In 
Rodriguez v. United States Parole Comm’n
, 594 F.2d 170, 175 (7th Cir. 1979), the Seventh Circuit held that the "deprivation of all opportunity to be released on parole also comes within the scope of [the 
ex post facto
] clause."  Like the accrual of CGCs, being paroled is not a certainty.  Since the complete deprivation of the opportunity to secure an early release date through parole is an 
ex post facto
 violation, so too must be the complete deprivation of all opportunity to secure an early release through the accumulation of CGCs.  Similarly, in 
Miller v. Florida
, 482 U.S. 423, 432, 96 L. Ed. 2d 351, 361, 107 S. Ct. 2446, 2452 (1987), the Supreme Court rejected Florida's argument that, following a change in the state's sentencing guidelines, no 
ex post facto
 violation occurred because the criminal defendant could not definitively prove that he would have received a lesser sentence under the pre-1978 system where the latter system established a higher presumptive sentencing range.  The certainty of a lesser sentence is unnecessary; a substantial impairment of the ability to reduce one's sentence is sufficient to state an 
ex post facto
 violation.

Furthermore, in 
Barger
, 163 Ill. 2d 357, our supreme court examined the constitutionality of another statute that eliminated the possibility of earning increased good-conduct credits.  That statute allowed inmates who successfully completed certain educational programs to multiply the good-conduct credits they earned by a factor of 1.25.  See Ill. Rev. Stat. 1991, ch. 38, par. 1003--6--3.  Subsequent to the plaintiffs' commission of the offenses for which they were imprisoned, the legislature made inmates who had been convicted of certain offenses ineligible for this benefit.  The plaintiffs had committed such offenses.  The supreme court held that the removal of the opportunity to enhance one's good-conduct credits by participating in educational programs constituted an 
ex post facto
 violation.  
Barger
, 163 Ill. 2d at 363.  Similarly to CGCs, whether an inmate would be eligible to enhance his or her good-conduct credits was uncertain.  There is no meaningful difference between the ability to reduce one's sentence through educational programs and the ability to otherwise earn a reduction through CGCs.  As the statue in 
Barger
 violated the 
ex post facto
 clause, so too does defendants' denial of plaintiffs' opportunity to earn CGCs.

Accordingly, we conclude that plaintiffs have set forth a basis for concluding that an 
ex post facto
 violation has occurred.  If, at the current time, the pre-1978 system would be more favorable to plaintiffs, they are entitled to have their sentences calculated pursuant to it and receive good-conduct credits that their conduct has otherwise merited.

B. Statute of Limitations

Defendants assert that the statute of limitations bars plaintiffs' claims.  Defendants concede that this issue was not raised in the trial court; however, they urge us to consider it here for the sake of judicial efficiency.  As the issue presented is relatively clear, we accept defendants' invitation.  Defendants point out that the statute of limitations for an action brought pursuant to section 1983 (42 U.S.C. §1983 (1994)) in Illinois is two years.  
Weiss v. Village of Downers Grove
, 225 Ill. App. 3d 466, 470 (1992).  The statute of limitations for a section 1983 claim is derived from the statute that would control a personal injury action in the state where the alleged constitutional deprivation occurred.  
Wilson v. Garcia
, 471 U.S. 261, 280, 85 L. Ed. 2d 254, 269, 105 S. Ct. 1938, 1949 (1985).  While federal law determines when a cause of action accrues (
Sellars v. Perry
, 80 F.3d 243, 245 (7th Cir. 1996)), state law determines what circumstances toll the statute of limitations (
Board of Regents of the University of New York v. Tomanio
, 446 U.S. 478, 483-84, 64 L. Ed. 2d 440, 447-48, 100 S. Ct. 1790, 1794-95 (1980)).

Defendants argue that any injury plaintiffs are suffering flows from the decision to recalculate plaintiffs' sentences.  As such, it occurred over 20 years ago and is well outside the two-year statute of limitations.  Defendants also assert that plaintiffs cannot show that they are complaining about a continuing violation, which would toll the statute of limitations.  We disagree.  It is well established under Illinois law that, when a tort involves continuing or repeated injury, the statute of limitations is tolled until the date of the last injury or the date the tortious acts cease.  
Roark v. Macoupin Creek Drainage District
, 316 Ill. App. 3d 835, 847 (2000); 
City of Rock Falls v. Chicago Title & Trust Co.
, 13 Ill. App. 3d 359, 364 (1973).  However, "[a] continuing violation *** is occasioned by continuing unlawful acts and conduct, not by continuing ill effects from an initial violation."  
Bank of Ravenswood v. City of Chicago
, 307 Ill. App. 3d 161, 167 (1999).  Where a plaintiff's injury flows from one overt act, the statute begins to run on the date of that act despite the continuing nature of the injury.  
Hyon Waste Management Services, Inc. v. City of Chicago
, 214 Ill. App. 3d 757, 763 (1991).  Thus, if defendants are correct in asserting that plaintiffs' injuries flow solely from the earlier recalculations of their sentences, plaintiffs' claims are time-barred.  

Defendants' premise is incorrect; plaintiffs' injuries do not flow from a single overt act that predates the applicable statute of limitations.  The very reason defendants assert that they were unable to take into account CGCs at the time they recalculated plaintiffs' sentences demonstrates that plaintiffs' injuries are not the result of a single overt act.  In their brief, defendants repeatedly assert that the new system was more favorable because they were unable to determine whether plaintiffs would be entitled to CGCs subsequent to the recalculation.  In other words, plaintiffs had not yet earned any CGCs at the time of the recalculations.  CGCs are earned at a rate of 7½ days per month.  
Rogers
, 181 Ill. App. 3d at 1042.  Thus, while defendants may have made a decision to deny future CGCs at the time of the recalculations, CGCs could not actually be denied until plaintiffs were eligible for them.  These denials occurred on a monthly basis during plaintiffs' incarceration through the month prior to the filing of their complaint.  This constituted a continuing course of conduct.  Hence, the last act complained of occurred well within the two-year statute of limitations, and the statute of limitations did not begin to run until that time.

C. Qualified Immunity

Finally, defendants contend that, insofar as plaintiffs seek to recover damages, their claims are barred by the doctrine of qualified immunity.  Public officials performing discretionary functions are immune from liability for civil damages where their conduct does not violate a clearly established constitutional or statutory right of which a reasonable person would have been aware.  
Harlow v. Fitzgerald
, 457 U.S. 800, 818, 73 L. Ed. 2d 396, 410, 102 S. Ct. 2727, 2738 (1982).  An official's conduct must be assessed in light of the law that was clearly established at the time of the complained-of conduct.  
Anderson v. Creighton
, 483 U.S. 635, 639, 97 L. Ed. 2d 523, 530, 107 S. Ct. 3034, 3038-39 (1987).  In determining whether an official is entitled to qualified immunity, the pertinent inquiry is whether, given the state of the law at the time of the act, a reasonable official would have understood that the act violated some constitutional or statutory right.  
Anderson
, 483 U.S. at 640, 97 L. Ed. 2d at 531, 107 S. Ct. at 3039.  In short, qualified immunity "protects 'all but the plainly incompetent or those who knowingly violate the law.' "  
Village of Lake Barrington v. Hogan
, 272 Ill. App. 3d 225, 237 (1995), quoting 
Malley v. Briggs
, 475 U.S. 335, 341, 89 L. Ed. 2d 271, 278, 106 S. Ct. 1092, 1096 (1986).  The burden of showing that a right is clearly established rests upon the plaintiff.  
Aboufariss v. City of De Kalb
, 305 Ill. App. 3d 1054, 1065 (1999).  Whether an official is entitled to qualified immunity is a question of law.  
Polenz v. Parrott
, 883 F.3d 551, 555 (7th Cir. 1989).  The doctrine does not bar claims for equitable relief.  
Denius v. Dunlap
, 209 F.3d 944, 959 (7th Cir. 2000).

In the present case, we conclude that the state of the law at the time plaintiffs' sentences were recalculated was not clearly established such that plaintiffs would be entitled to seek monetary damages.  A reasonable official could have believed that, by recalculating plaintiffs' sentences and applying the system most favorable given the facts available to them at that time, no constitutional deprivation occurred.  No cases existed addressing the propriety of conducting a one-time recalculation at the time plaintiffs' sentences were recalculated.  Whether further recalculations were required was an issue on which reasonable officials could have differed, for one could conclude that plaintiffs' rights were protected by giving them the benefit of the most favorable system at the time, particularly since CGCs might not be earned, just as one could conclude that periodic recalculations were required to account for the accrual of CGCs. Plaintiffs have not met their burden of showing that defendants' conduct violated any clearly established right; therefore, we hold that defendants are entitled to qualified immunity in the present case.  

III. CONCLUSION

For the foregoing reasons, we reverse the decision of the circuit court of Lee County dismissing plaintiffs' complaint insofar as it precluded them from seeking equitable relief.  Because defendants are entitled to qualified immunity, we affirm the trial court's decision to the extent that it precluded plaintiffs from seeking monetary damages.  On remand, the trial court is empowered to fashion an appropriate equitable remedy to the extent plaintiffs prove an entitlement to one.

Affirmed in part and reversed in part; cause remanded.

McLAREN
 and 
BYRNE
, JJ., concur.