# In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 03-1369

WILLIE B. HADLEY, JR.,

*Petitioner-Appellant,*

v.

MICHAEL L. HOLMES,

*Respondent-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 01 C 619—**J. Phil Gilbert**, *Judge.*

———————

SUBMITTED AUGUST 20, 2003[*]—DECIDED SEPTEMBER 3, 2003

———————

Before BAUER, KANNE, and EVANS, *Circuit Judges.*

PER CURIAM. Illinois inmate Willie Hadley, Jr., petitioned
for a writ of habeas corpus under 28 U.S.C. § 2254, alleging
that his ability to earn credit for good conduct in prison has
been restricted in violation of the United States Constitu-
tion. The district court denied the petition on the ground
that in state court Hadley had procedurally defaulted his
claims. Hadley filed a timely notice of appeal. We affirm on
the grounds set forth in this order.

———————————————

[*] After an examination of the briefs and the record, we have
concluded that oral argument is unnecessary. Thus, this appeal
is submitted on the briefs and the record. *See* Fed. R. App. P.
34(a)(2).

In 1976 Hadley pleaded guilty to first-degree murder and was sentenced to prison for an indeterminate term of 24 to 74 years. When Hadley was sentenced, Illinois prisons allotted good time on a progressive scale that after six years reached a maximum ratio of six months' credit for every year of imprisonment. *See McGee v. Snyder*, 760 N.E.2d 982, 989 (Ill. App. Ct. 2001). These credits were known as "statutory" good time. *See id.* The Director of the prison system was also allowed to award additional "compensatory" good time for participation in educational or work programs. *See Johnson v. Franzen*, 397 N.E.2d 825, 826 (Ill. 1979). On February 1, 1978, the Illinois legislature amended the governing statute to require the department of corrections to replace the progressive scale of awarding good time with a day-for-day credit system for all prisoners. *See id.* The revised statute also eliminated "compensatory" good time and instead gave the Director discretion to "award up to 90 days additional good conduct credit for meritorious service in specific instances as the Director deems proper." Ill. Stat. ch. 38, par. 1003-6-3(a)(2) (1978) (current version at 730 Ill. Comp. Stat. 5/3-6-3(a)(3)). Illinois courts have held that the decision whether to use the revised system, the old system, or a combination of the two was to be made by calculating which was most favorable to the inmate. *See Williams v. Irving*, 424 N.E.2d 381, 384 (Ill. App. Ct. 1981). We cannot tell from the record whether Hadley's credits are being calculated under the pre- or post-1978 system or a combination of the two.

In 1983 the Supreme Court of Illinois interpreted the 1978 amendment as prohibiting the Director from granting more than a *total* of 90 days of discretionary good time to any inmate during his or her term of incarceration, regardless of length. *Lane v. Sklodowski*, 454 N.E.2d 322, 324 (Ill. 1983). Prior to *Lane* the Director had interpreted former § 1003-6-3 to permit multiple awards of up to 90 days each. *See id.* at 323. Although rejecting that position for pro-

spective awards, the *Lane* court ordered that discretionary awards already given be honored even if totaling more than 90 days. *Id.* at 326.

In September 1990 the legislature again amended the governing statute, this time adding a provision allowing some prisoners to earn good-time credits for participating in educational and work programs. *See* 730 Ill. Comp. Stat. 5/3-6-3(a)(3). But this benefit was not extended to those, like Hadley, who are imprisoned for first-degree murder. The 1990 amendment did not revoke Hadley's accumulated credits or reduce the rate at which he would earn good time in the future; rather, the change simply allowed other inmates to earn good time at a faster pace. *See id.*

Hadley eventually responded to these changes by petitioning for habeas corpus relief in state court in 1999. He principally claimed that the 1990 amendment violated the Ex Post Facto Clauses of the federal and Illinois constitutions. *See* U.S. Const. art. I, § 9, cl. 3; Ill. Const. art. I, § 16. Hadley also claimed that implementation of the *Lane* ruling violated his federal constitutional rights to due process and equal protection. The Illinois circuit court dismissed the petition, explaining that it did so "for reasons alleged in the motion to dismiss" filed by the state. On appeal to the Appellate Court of Illinois, Hadley pressed his claim concerning *Lane*, but abandoned his ex post facto claim. The appellate court affirmed the dismissal, and the state supreme court summarily denied leave to appeal.

Hadley then turned to the federal courts, pressing the two claims he presented in his state-court petition. The district court dismissed the petition, concluding that Hadley had procedurally defaulted both claims. Alternatively, the district court held that Hadley's claims were meritless.

We start with Hadley's second claim and agree with the district court that Hadley procedurally defaulted it. We review the district court's procedural default ruling *de novo*.

*See Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002). Hadley raised the ex post facto claim in his state habeas corpus petition in the circuit court, but abandoned it in his appeal to the appellate and supreme courts. Federal courts will not address the merits of a habeas corpus claim unless the petitioner presented it in "one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see United States ex rel. Bell v. Pierson*, 267 F.3d 544, 555 (7th Cir. 2001). Hadley did not take his ex post facto claim through a complete round, and thus defaulted it. And although a procedural default can sometimes be excused, *see Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Whitehead v. Cowan*, 263 F.3d 708, 727 (7th Cir. 2001), Hadley has never argued that his circumstances would satisfy one of the narrow exceptions.

Even if not defaulted, however, Hadley's ex post facto claim is frivolous. His grievance is that the 1990 amendment allows *other* inmates not convicted of first- or second-degree murder to earn up to 180 days of discretionary credit, while both before and after the amendment he was limited to 90. A change in law violates the federal Ex Post Facto Clause, however, only if it makes the punishment for a crime more onerous after its commission. *Collins v. Youngblood*, 497 U.S. 37, 41-42 (1990); *Weaver v. Graham*, 450 U.S. 24, 28 (1981). The 1990 amendment did not reduce the amount of credit Hadley could accumulate, so his argument fails.

We turn, then, to Hadley's first claim: that he is being denied due process and equal protection by the Director's implementation of the Illinois supreme court's holding in *Lane* that the 90-day cap on discretionary awards enacted in 1978 is a limit on the number of days that can be given during the entire term of imprisonment, not a limit on the number of days that could be given on any single occasion. The district court concluded that Hadley also

defaulted this claim, but we do not decide this question. In our view, Hadley's first claim is not cognizable under § 2254, and should instead have been raised if at all under 42 U.S.C. § 1983.

In order to bring an action under § 2254, a prisoner must be "in custody" pursuant to the conviction or sentence being challenged. *See* 28 U.S.C. § 2254; *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989) (per curiam). Although § 2254 is the appropriate vehicle when prison officials have *revoked* good-time credits once earned, *e.g.*, *Walker v. O'Brien*, 216 F.3d 626, 633 (7th Cir. 2000), or *lowered* a previously established credit-earning classification, *see Montgomery v. Anderson*, 262 F.3d 641, 643 (7th Cir. 2001), Hadley is not complaining that any benefit already conferred has been taken away. Hadley argues that his ability to earn discretionary credits in the *future* was hurt by the Director's implementation of *Lane*, and we have held that § 1983 must be used where a claim, if decided favorably to the prisoner, at best *might* accelerate the accrual of good time and hasten the prisoner's release. *See Zimmerman v. Tribble*, 226 F.3d 568, 571-72 (7th Cir. 2000) (addressing, under § 1983, prisoner's constitutional claim that his transfer from a prison that had vocational training and substance-abuse programs prevented him from earning additional good time); *Higgason v. Farley*, 83 F.3d 807, 809-10 (7th Cir. 1995) (addressing, under § 1983, inmate's claim that not allowing him to participate in educational programs deprived him of opportunity to earn good time; court observed that "denying the opportunity to earn credits did not 'inevitably affect the duration of the sentence' ").

The *Lane* decision did not result in Hadley's loss of good time already awarded, and both before and after the decision Hadley had no entitlement to—and no expectation of receiving—any discretionary good time. His complaint is really about the Director's reliance on *Lane* to limit the

amount of discretionary good time any prisoner can receive, and such a challenge to the Director's procedure in awarding discretionary good time is similar to an inmate's attacks on the procedures states use to consider applications for parole. The Supreme Court has analyzed disputes about parole procedures under § 1983. *See Bd. of Pardons v. Allen*, 482 U.S. 369, 371 (1987); *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1, 12 (1979). We have held that attacks on parole procedures are properly brought under § 1983 because they ask courts to examine administrative procedures, not the duration of an inmate's custody. *See Moran v. Sondalle*, 218 F.3d 647, 650 (7th Cir. 2000); *Clark v. Thompson*, 960 F.2d 663, 665 (7th Cir. 1992). Here, Hadley is arguing that the Director's method of awarding discretionary good time has been, after the *Lane* decision, unconstitutional as applied to him. If successful, this claim has the potential to affect Hadley's duration of confinement, but that possibility is too attenuated from this proceeding to state a claim under § 2254.

District courts faced with a § 1983 suit brought under § 2254 should, rather than reach the merits, dismiss without prejudice to the possibility of a future § 1983 action or at least give notice that the suit will be converted to one under § 1983 if the plaintiff declines to dismiss voluntarily. *See Moran*, 218 F.3d at 651; *Pischke v. Litscher*, 178 F.3d 497, 500 (7th Cir. 1999). Accordingly, although we uphold the dismissal of Hadley's first claim for relief, we do so with the understanding that Hadley is free to pursue it under § 1983, subject to all of the normal constraints of the Prison Litigation Reform Act.

We hasten to add, however, that Hadley would be foolish to pursue this path because his claim that implementation of *Lane* has denied him due process and equal protection is frivolous. The prospective credit Hadley is requesting is entirely within the control of the Director, and there is no

due process "protection for action that merely *might* affect the duration of the sentence." *Zimmerman*, 226 F.3d at 571-72 (emphasis added) (citing *Sandin v. Conner*, 515 U.S. 472, 487 (1995)). With no entitlement to discretionary good time, Hadley has no liberty interest, and therefore the state need not afford him due process before declining to award him the credit. Hadley's equal protection claim similarly fails because the *Lane* decision did not differentiate between inmates, but instructed that no more than 90 days discretionary good-time credit can be awarded to *all* inmates, regardless of the crime of which they were convicted. Accordingly, we AFFIRM the district court's order on the grounds set forth in this opinion.

A true Copy:

      Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*